IN THE UNITED STATES DISTRICT COURT
SORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **JEFFREY WONSER**<br>c/o Speech Law LLC<br>1265 West Sixth Street, Suite 400<br>Cleveland, OH 44113<br>        *Plaintiff,*<br>      v.<br>**CHARLES L. NORMAN**<br>1970 West Broad Street<br>Columbus, OH 43223<br>        and<br>**ANDY WILSON**<br>30th Floor<br>77 South High Street<br>Columbus, OH 43215<br>        and<br>**THOMAS STICKRATH**<br>30th Floor<br>77 South High Street<br>Columbus, OH 43215<br>        *Defendants.* | Case No.: _____ |

**COMPLAINT (JURY DEMAND ENDORSED HEREON)**

1. This is an action under 42 U.S.C. §1983 for legal, declaratory and injunctive relief based on Defendants' violations of Plaintiff Jeffrey Wonser's right to free speech.

2. Mr. Wonser is a citizen of the State of Ohio who sought to place a personalized message on his license plate.

3. But the Ohio Bureau of Motor Vehicles rejected his application, relying on a standardless and unconstitutional licensing scheme that grants it unbridled discretion in determining which messages to approve or reject.

4. Mr. Wonser has thus been denied his right of freedom of speech as guaranteed by the First Amendment and the Ohio Constitution.

## PARTIES

5. Plaintiff Jeffrey Wonser is a citizen and resident of Heath, Ohio.

6. Defendant Charles L. Norman is the Registrar of the Ohio BMV, and is charged with administering and enforcing the rules of the Ohio BMV.

7. Defendant Andy Wilson is the Director of the Ohio Department of Public Safety, of which the Ohio BMV is a division.

8. Defendant Thomas Stickrath is the former Director of the Ohio Department of Public Safety.

## JURISDICTION & VENUE

9. This Court has jurisdiction over this matter under the following five statutes:

   a. 28 U.S.C. §1343, in that this action arises under the United States Constitution;

   b. 28 U.S.C. § 1343 (a)(3), in that it is brought to redress deprivations, under color of State law, of rights, privileges, and immunities secured by the United States Constitution;

   c. 28 U.S.C. § 1343 (a)(4), in that its purpose is to secure equitable relief under Acts of Congress, specifically 42 U.S.C. § 1983, providing for the protection of civil rights;

   d. 28 U.S.C. § 2201 (a), in that one of the purposes is to secure declaratory relief; and

   e. 28 U.S.C. § 2202 (a), in that the Plaintiff is requesting both preliminary and permanent injunctive relief.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are situated in this district, and because all the claims asserted arose within this judicial district.

## FACTS

11. The BMV is responsible for licensing drivers and vehicles for public highways in Ohio.

12. Historically, the BMV has licensed vehicles for operation on Ohio's highways using license plates with preprinted combinations of letters and numbers with no particular meaning, assigned to drivers in no particular order.

13. In 1973, the Ohio General Assembly approved a bill that sought to fund roadside parks by allowing vehicle owners to customize the combinations on their license plates to create messages of their own choosing.

14. The messages on those license plates are designed by the applicant, who can decide whether to render them forward or backwards, how to space the words in the message, whether to spell words conventionally, whether to abbreviate them, whether to replace letters with similar-sounding or similar-looking numerals, and so on.

15. Those messages sometimes communicate nothing more than the owner's name. For example:

    a. The BMV has approved the message "BARB G."

    b. The BMV has approved the message "DANA A."

    c. The BMV has approved the message "LORIE K."

    d. The BMV has approved the message "TOM P."

16. Those messages sometimes consist of endorsements of the applicant's goods or services. For example:

    a. The BMV has approved the message "GRASS" for the owner of a lawn-care business.

  b.  The BMV has approved the message "FC KR8TM" for the owner of a business called First Choice Kratom.

  c.  The BMV has approved the message "NFG TOW" for a trailer owned by NFG Racing.

  d.  The BMV has approved the message "MCM AF" for the owner of Mid-Century Modern As F**k Dayton.

17. Other messages are more cryptic, and sometimes completely indecipherable. For example:

  a.  The BMV has approved the message "014587."

  b.  The BMV has approved the message "CBSP."

  c.  The BMV has approved the message "M7XQR12."

  d.  The BMV has approved the message "ZYAYYDS."

18. The state does not purport to endorse every message it prints.

19. For example, the messages it approves are often contradictory. For instance:

  a.  The BMV has approved the message "GO BUCKS" but also "GO BLUE."

  b.  The BMV has approved the message "GODLY" but also "GODLESS."

  c.  The BMV has approved the message "LUV DIRT" but also "H8 DIRT."

  d.  The BMV has approved the messages "VAXN8" and "VAXPLZ"; but also "ANTIVAX" and "NOVAX."

20. In Ohio, the motoring public generally recognizes those messages as coming from the vehicle owner, indicating that driver—and not the government—supports or opposes those messages.

21. When the program first launched, the BMV was aware of and anticipating the likelihood that some vehicle owners would seek license plates with messages that others would find objectionable.

22. Despite those concerns, the BMV never promulgated any rules governing what messages it would and would not approve on vanity plates.

23. Instead, the BMV assembled a panel of employees with no special expertise or qualifications, and tasked them with operating as government censors, responsible for reviewing applications for vanity plates and deciding whether they should be approved or rejected.

24. In doing so, the BMV took no official position on what messages it would approve or reject.

25. Instead, it left its panel to develop its own criteria over time.

### The *Zucco* settlement

26. Under that regime, the BMV gave its panel unbridled discretion to censor messages based on its subjective assessments of what combinations of letters and/or numbers were "words, connotations or abbreviations of a profane, obscene or vulgar nature" and "words, connotations or abbreviations that are ethnic or controversial in origin or character, and which are judged by the BMV to be offensive, disparaging or socially insensitive."

27. That scheme was the subject of a previous lawsuit in this Court, *Zucco v. Caltrider*, No. 2:01-cv-01270 (S.D. Ohio).

28. In that case, the BMV approved but later revoked the plaintiff's application for a plate reading "RDRAGE," based on its conclusion that "road rage kills people."

29. Because that level of unfettered discretion over speech violates the First Amendment, the BMV settled that lawsuit with an agreement to approve the plaintiff's application and issue his requested license plate.

30. The settlement also required the BMV to adopt narrower guidelines for evaluating applications.

31. Under the agreed protocols, the BMV would reject plates as "inappropriate" only if they contained "words, combinations and/or phrases (in any language or when read either frontward or backward)" that:

    a. are profane (i.e, swearwords or expletives)

    b. are obscene

    c. are sexually explicit

    d. are scatological (i.e., having to do with fecal excrement)

    e. are so offensive that they could reasonably be expected to provoke a violent response from viewers without additional comment

    f. advocate immediate lawlessness

    g. advocate lawless activities.

32. But shortly after the plaintiff dismissed that case, the BMV returned to a largely arbitrary censorship regime.

33. Rather than screening out messages that actually *are* obscene, sexually explicit, or scatological, the BMV now permits its censors to reject any message that "*can be interpreted* as obscene, sexually explicit, or scatological."

34. Under such a system, the BMV's censors can simply search for obscure justifications to prohibit any messages they don't like.

35. And they often simply defer to the tastes of random bozos on the Internet.

36. For instance, although an applicant wanted "PLSKYS" placed on a "Stop Bullying" license plate to mean "Please Keep Youth Safe," BMV censors rejected it because people on UrbanDictionary.com gave more thumbs-ups to the meaning "Please Kill Yourself."

37. And although "NIU BI" means "awesome" in Chinese, a BMV censor rejected it because some random person on UrbanDictionary.com with no known language expertise had translated it as "fucking awesome."

**The BMV censorship regime gives no notice of what messages are prohibited.**

38. Under its new scheme, the BMV has allowed its censors to run amok, censoring messages not because they violate any of the *Zucco* criteria, but because they violate its censors' subjective criteria.

39. It rejected "BOSS BSH" because a BMV censor believed someone could perceive "BSH" as a shortened form of "bish," which the censor believed someone could in turn perceive as a slang for "bitch."

40. It rejected "COVDHX" because a BMV censor believed someone could perceive it as "COVID hoax."

41. It rejected "NFG." The applicant sought to remind fellow drivers to "never forget God," but a BMV censor fretted that someone could perceive it as meaning "no fucking good."

42. It rejected "DRIVE TF." The applicant wished to communicate that the vehicle was primarily used to transport their children, whose initials were T and F, but a BMV censor worried that someone might instead perceive it as meaning "drive the fuck."

43. It rejected "SL4YER." A driver wanted to communicate that he was a fan of the heavy-metal band Slayer, but a BMV censor worried that someone could perceive it as meaning "pussy slayer," which could in turn be perceived as sexually explicit.

44. It rejected "WHT R1CE," "LA NEGRA," "POLACK," "DAMICK," and "GYLTY" because BMV censors believed they could provoke Asians, African-Americans, Polish people, Irish people, and police officers to violence.

45. It rejected "TIGSUX" because a BMV censor believed it could be perceived as meaning "Tigers Suck," which could in turn provoke violence from fans of the Massillon High School football team.

46. It rejected "SHAG SW" because a BMV censor believed someone could perceive it as meaning "shag wagon," and in turn perceive "shag wagon" as sexually explicit.

47. It rejected "XXXTRA" because a BMV censor believed someone could perceive "XXX" as a reference to the rating for pornographic films.

48. It rejected "NUK U" because a BMV censor believed someone could perceive it as meaning "nuke you" and in turn be provoked to detonate a nuclear bomb.

49. It rejected "SUKTDRY." While conceding that the applicant operated a carpet-cleaning business, a BMV censor believed that message could be perceived as sexually explicit.

50. It rejected "TNSAF." While the driver wanted to evoke the Canadian spirit—memorialized as "True North, strong and free" in the Canadian national anthem—a BMV censor worred that the message could also be perceived as "True North strong as fuck."

51. It rejected "BICHOTA." While conceding that "bichota" a Latinization of "big shot," a BMV censor believed someone could perceive it as meaning "bitch."

52. It rejected "370455 V" because a BMV censor believed that it could be perceived as "asshole."

53. It rejected "XKXX" because a BMV censor believed it "may be affiliated with the Ku Klux Klan."

54. It rejected "EFORTY6." Although the plate was requested for a BMW E46, a BMV censor believed it could be perceived as meaning "Fuck Joe Biden."

55. None of these messages actually violate the rules the BMV agreed to apply in *Zucco*.

56. The BMV itself is not on notice of what messages it will and will not approve.

57. Instead, its censors approve some messages only until other drivers complain about them, at which point the BMV recalls the license plate.

58. For instance, a driver was able to register "GYLTY" in 2013, but BMV censors retroactively rejected it in 2021 because it could reasonably be expected to provoke the police to violence.

59. Another applicant was able to register "IDFW GAS" on his Tesla, but BMV censors retroactively rejected it when another driver complained that the F might stand for "fuck."

60. Another applicant was able to register "BUY HASH" in 2021, but BMV censors retroactively rejected in when another driver complained that it was "offensive to me and to others."

**The BMV censorship regime encourages arbitrary enforcement.**

61. Under its new scheme, the BMV permits arbitrary enforcement of the criteria it purports to apply, rejecting some messages as violations of its rules while approving virtually identical messages that could not be approved if the rules were being applied consistently.

62. For instance, although they rejected "F46 LGB" as containing two profane phrases, BMV censors approved both "F46" and "LGB" as individual messages.

63. BMV censors approved "MRS YAOI," but they rejected "YAOIPLZ" because they believed someone could perceive it as referring to *yaoi*, a genre of Japanese literature featuring same-sex romantic relationships.

64. BMV censors rejected "LMAO GAS" and "LMAO EPA" because they believed "LMAO" could be perceived as meaning "laugh my ass off," but they approved "LMAOFF."

65. BMV censors rejected "AXEHOLE" as profane, but they approved "AXE HOLE."

66. BMV censors rejected "REDRUM8" as advocating immediate lawlessness, but they approved "REDRUM6."

67. BMV censors approved "SKEET" but rejected "JIZZ," although they believed both referred to ejaculation.

68. BMV censors rejected "EATCHIT," but they approved "EAT CHI T."

69. And there are several messages that BMV censors have at one time denied *and* at another time approved, including "2FASTFU," "BAMAWAP," "BOFADZ," "FILTHYB," "FK7," "GASFML," "HIT," "LLIGMA," "LOLICON," "LTLCKR," "PHOQ2," "PKLPMP," "SHAGNN," and "STUKATS."

70. None of these messages actually violate the rules the BMV agreed to apply in *Zucco*.

**The BMV censorship regime encourages discriminatory enforcement.**

71. Under its new scheme, the BMV permits discriminatory enforcement of the criteria it purports to apply.

72. Indeed, the BMV's website will not even process applications for license plates unless applicants disclose the meaning of their message so its censors can evaluate the message based on the ideas or opinions it conveys.

73. The BMV censors are more lenient toward messages from Democrats than from Republicans.

74. BMV censors rejected "FJB" because they believed it could be perceived as meaning "Fuck Joe Biden," but they approved "FDT."

75. BMV censors rejected "FK BIDEN," "FKJBIDN," "FJBIDEN," and "FKBID3N," but they approved "FKTRMP," "FUK TRMP," and "FU TRMP."

76. BMV censors rejected "JJBH8TN," because they believed it could be perceived as meaning "Joe and Jill Biden Hating," but they approved "IH8GOP."

77. BMV censors likewise enforce viewpoint discrimination on other topics.

78. BMV censors rejected "WHT PWR 6" as offensive because it could be perceived as meaning "white power," but they approved "BLK PWR 6."

79. BMV censors rejected "H8OHIO," "IH8OHIO," and "H8 MY ST8" because they indicated the applicants hate Ohio, but they approved "LUV OH" and "LUVN OH."

80. None of these messages actually violate the rules the BMV agreed to apply in *Zucco*.

**Mr. Wonser requests a vanity plate with no objective meaning**

81. Mr. Wonser likewise ran afoul of the BMV's sweeping censorship regime when he applied for a vanity plate reading "F46 LGB."

82. The string of characters "F46 LGB" has no objective meaning.

83. Most people who see it attach no meaning to it whatsoever.

84. Some have read the numbers as letters and interpreted it as "FAG LGB," a gay-pride message intended to reclaim a homophobic slur.

85. Others have read it as meaning "Fuck 46 (the 46th president of the United States, Joe Biden), Let's Go Brandon."

86. The string of characters "F46 LGB" does not run afoul of any of the criteria the BMV agreed to apply in *Zucco*.

87. Nonetheless, the BMV denied Plaintiff's application to communicate his message on his license plate.

88. The BMV cited only one justification for censoring Mr. Wonser's message: "it was denied due to the potential perception of inappropriateness."

89. Mr. Wonser objected, noting that his message did not violate any of the BMV's criteria.

90. The BMV responded and said that his message did not conform to "Guideline 1," which prohibits messages that "[a]re profane (that is, swearwords or expletives), or can be interpreted as obscene, sexually explicit, or scatological (i.e., pertaining to feces or excrement)."

91. That guideline gives the government unbridled discretion to censor speech, as it abandons objective criteria and asks instead whether anyone could possibly interpret a message as obscene, sexually explicit, or scatological.

92. As every teenage boy knows, literally *anything* can be interpreted as obscene, sexually explicit, or scatological.

93. Mr. Wonser administratively appealed the BMV's rejection of his message on various grounds, noting the arbitrary nature of the BMV's criteria and reminding it of the *Zucco* case.

94. The BMV wrote back nine days later, denying Mr. Wonser's appeal without offering any justification.

95. When Mr. Wonser requested a justification, the BMV relied on the settlement agreement in *Zucco*.

96. But in doing so, it shifted its explanation for its denial yet again.

97. Where the BMV had initially said it rejected Mr. Wonser's message "due to the potential perception of inappropriateness," and then because it "can be interpreted as obscene, sexually explicit, or scatological," this message instead said the message was rejected because it "[c]ontains words, combinations and/or phrases (in any language and when read either frontward or backwards) that are profane (that is, swearwords and expletives), obscene, sexually explicit, or scatological (feces or excrement)."

98. But the string of characters "F46 LGB" does not violate that rule.

99. In a subsequent e-mail, the BMV admitted that it would consider approving Mr. Wonser's message if he could provide evidence that he had a different viewpoint in mind.

100. For instance, the BMV said it would consider approving Mr. Wonser's message if he could provide evidence that it was meant to refer to Mr. Wonser's initials.

101. The BMV then submitted Mr. Wonser's application to its Special Plate Committee for further review.

102. The Committee again rejected Mr. Wonser's application.

103. The BMV said the Committee had reverted to its original justification for rejecting Mr. Wonser's application: "it was denied due to the potential perception of inappropriateness."

104. It no longer offered Mr. Wonser any further opportunity to appeal.

105. Instead, it gave him until May 20, 2022 to choose from three options: "request a different personalization, get a full refund, or renew your current plate and received a partial refund."

106. Mr. Wonser requested an opportunity to speak to the BMV's Registrar to make his case, but the BMV refused.

107. On May 20, 2022, the BMV processed Mr. Wonser's refund.

108. Through counsel, Mr. Wonser raised the issue with Defendants' attorneys, reminding them of the laws governing the regulation of messages on vanity license plates, requesting approval of his message, and calling for reforms to the BMV's licensing scheme.

109. The BMV refused.

110. In December 2022, Defendant Wilson replaced Defendant Stickrath as Registrar.

111. After that change, Mr. Wonser again sought to register a plate with his chosen message.

112. He could not process that request.

113. The BMV had programmed its computers to automatically reject his message.

114. Through counsel, Mr. Wonser again raised the issue with Defendants' attorneys.

115. The BMV still did not process Mr. Wonser's request.

116. Mr. Wonser never received the plate with the message he requested.

117. Defendants' conduct has injured Mr. Wonser.

118. He has suffered economic and emotional injuries, and he has been injured by the loss of the opportunity to spread his message.

CLAIM 1
FIRST AMENDMENT VIOLATION, 42 U.S.C. § 1983—
THE GUIDELINES ARE FACIALLY UNCONSTITUTIONAL

119. Plaintiff re-incorporates all the preceding allegations.

120. The Guidelines represent Defendants' official policies, practices, customs, and usages.

121. The Guidelines empower BMV employees to determine which combinations will or will not be displayed on the official license plates of the State.

122. The Guidelines are unconstitutionally vague and overbroad.

123. The Guidelines fail to give a person of ordinary intelligence fair notice of what messages are forbidden.

124. The Guidelines authorize and encourage arbitrary and discriminatory enforcement.

125. The Guidelines are overbroad, prohibiting a substantial amount of protected speech in relation to their clearly lawful applications.

126. The BMV's vague and shifting standards ignore well-established constitutional protections under the First and Fourteenth Amendments to the United States Constitution.

## CLAIM 2
### FIRST AMENDMENT VIOLATION, 42 U.S.C. § 1983— THE GUIDELINES ARE UNCONSTITUTIONAL AS APPLIED TO MR. WONSER

127. Plaintiff re-incorporates all the preceding allegations.

128. Defendants have unconstitutionally applied the Guidelines to Mr. Wonser's message.

129. The string of characters "F46 LGB" does not contain any word, combination or phrase that is profane in any language, read either frontward or backwards.

130. The string of characters "F46 LGB" does not contain any word, combination or phrase that is obscene in any language, read either frontward or backwards.

131. The string of characters "F46 LGB" does not contain any word, combination or phrase that is sexually explicit in any language, read either frontward or backwards.

132. The string of characters "F46 LGB" does not contain any word, combination or phrase that is scatological in any language, read either frontward or backwards.

133. The string of characters "F46 LGB" does not contain any word, combination or phrase that is so offensive in any language, read either frontward or backwards, that it could reasonably be expected to provoke a violent response from viewers without additional comment.

134. The string of characters "F46 LGB" does not contain any word, combination or phrase that advocates immediate lawlessness in any language, read either frontward or backwards.

135. The string of characters "F46 LGB" does not contain any word, combination or phrase that advocates lawless activities in any language, read either frontward or backwards.

136. Likewise, Mr. Wonser's chosen message does not fall outside the protection of the First Amendment.

137. The string of characters "F46 LGB" is not advocacy intended and likely to incite imminent lawless action.

138. The string of characters "F46 LGB" is not obscene.

139. The string of characters "F46 LGB" is not defamatory.

140. The string of characters "F46 LGB" is not integral to criminal conduct.

141. The string of characters "F46 LGB" is not fighting words.

142. The string of characters "F46 LGB" is not child pornography.

143. The string of characters "F46 LGB" is not fraudulent.

144. The string of characters "F46 LGB" is not a true threat.

145. The string of characters "F46 LGB" does not present some grave and imminent threat the government has the power to prevent.

146. No substantial or compelling governmental interest exists for censoring Mr. Wonser's message.

147. No governmental interest in proscribing Mr. Wonser's message outweighs his First Amendment right to communicate it.

## CLAIM 3
### CIVIL LIABILITY FOR CRIMINAL ACTS, OHIO REV. CODE § 2307.60

148. Plaintiff re-incorporates all the preceding allegations.

149. Under Ohio Rev. Code § 2307.60 (A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action," including attorneys' fees and punitive damages.

150. Under Ohio Rev. Code § 2921.45, it is a criminal act for any "public servant, under color of the public servant's office, employment, or authority," to "knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right."

151. Under the First Amendment and under the Ohio Constitution, Mr. Wonser has the right to free speech.

152. By knowingly depriving Mr. Wonser of his right to communicate the message of his choosing, Defendants have committed the criminal act of interfering with civil rights.

### JURY DEMAND

153. Mr. Wonser demands a trial by jury.

### PRAYER FOR RELIEF

Mr. Wonser therefore requests that the Court:

A. Declare that the Special Plate Screening Guidelines are unconstitutionally vague and overbroad, and thus unconstitutional on their face;

B. Declare that the Special Plate Screening Guidelines, as applied, violate Mr. Wonser's freedom of speech under the First Amendment to the United States Constitution and Article I of the Ohio State Constitution;

C. Enter a preliminary and permanent injunction barring Defendants from enforcing the Special Plate Screening Guidelines;

D. Enter a preliminary and permanent injunction ordering Defendants to process and approve Mr. Wonser's application;

E. Award Mr. Wonser damages;

F. Award Mr. Wonser his attorney fees pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54,

G. Award Mr. Wonser his costs;

H. Grant any further relief that the Court deems proper.

 Respectfully submitted,

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
Speech Law, LLC
1265 West Sixth Street, Suite 400
Cleveland, OH 44113-1326
216-912-2195 Phone/Fax
brian.bardwell@speech.law

*Counsel for Plaintiff Jeffrey Wonser*