# Speech Law LLC

## OHIO'S FIRST AMENDMENT LAW FIRM

July 14, 2022

*Via e-mail to rlmcguirerose@dps.ohio.gov*

Robin McGuire Rose
1970 West Broad Street
Columbus, OH 43223

Re:     Special-plate denial (F46 LGB)

Dear Ms. Rose,

We are writing on behalf of our client, Jeffrey Wonser. On March 11, 2022, the Bureau denied Mr. Wonser's application for a vanity plate reading "F46 LGB." The Bureau explained that it rejected Mr. Wonser's application "due to the potential perception of inappropriateness" and identified three grounds on which the Bureau rejects vanity plates. When Mr. Wonser objected, noting that his application fit none of those criteria, the Bureau shifted from its "potential perception of inappropriateness" justification to an assertion that Mr. Wonser's requested license plate was "profane" or could be interpreted as "obscene, sexually explicit, or scatological."

Mr. Wonser formally appealed, noting that the Bureau has approved the same strings of characters for other drivers, but the Registrar affirmed the denial without offering any explanation. When Mr. Wonser pressed the issue, the Bureau offered a third explanation for the denial, relying on its settlement agreement in *Zucco v. Caltrider*, which purports to permit the Bureau to deny applications for plates containing "words, combinations and/or phrases … that are profane … obscene, sexually explicit, or scatological."

These vague and shifting standards ignore well-established constitutional protections. It is not—nor has it ever been—the government's job to read endless possibilities for subjective offense into private speech, merely to justify banning it.

The messages on vanity plates are protected as private speech that have a "personalized message with intrinsic meaning . . . specific to the owner,"[1] so federal courts consistently treat them as either a limited public forum or a nonpublic forum. "[I]n either case a speech restriction must be reasonable and viewpoint neutral."[2]

The Bureau's decision in this case is neither.

In *Matwyuk v. Johnson*, 22 F. Supp. 3d 812 (W.D. Mich. 2014), an anti-war activist sued the Michigan secretary of state for denying his application for a vanity plate reading "WAR SUX" based on a statute prohibiting combinations "that might carry a connotation offensive to good taste and decency." The state argued the restriction was permissible because "SUX" could have a

---

[1] *Mitchell v. Maryland Motor Vehicle Administration*, 450 Md. 282, 294, 148 A.3d 319 (2016).

[2] *Hart v. Thomas*, 422 F. Supp. 3d 1227, 12

**Brian D. Bardwell**

216-912-2195   |   brian.bardwell@speech.la

PLAINTIFF'S EXHIBIT 39

WONSER_003715

sexual connotation, but the court held that the statute was facially unconstitutional because it "lacks objective criteria, and thus confers unbounded discretion on the decisionmaker."[3]

> [A]lthough "sucks" does have a sexual connotation when used in a specific context, it has other accepted meanings having nothing to do with sex. ... Development of a factual record will assist the Court in determining whether usage of the word "sucks" or "SUX" in "WAR SUX" is generally understood to convey a sexual meaning.[4]

Similarly, in *Hart v. Thomas*, the plaintiff sued the Kentucky Transportation Cabinet for denying his application for a plate reading "IM GOD." The state argued it was permitted to limit the acceptable topics on vanity plates to exclude discussion of religion, but the court held that because it allowed other combinations that acknowledged the existence of a god, its rule against promoting religious viewpoints was applied "so inconsistent[ly]" that it failed constitutional standards.[5]

The Bureau has adopted policies and practices that suffer the same infirmities. It refuses to issue a plate that it believes *some people* might interpret to mean "Fuck Joe Biden," but even that message is not sexually explicit. Any reasonable reader would interpret that message to be a caustic condemnation of President Biden as a politician; no one would read it and believe that Mr. Wonser's license plate was commanding them to engage the president in penetrative sex.

And whatever message Mr. Wonser may actually intend to convey with his requested plate, the Bureau cannot prohibit it in reliance on standards with no objective criteria. As in *Matryuk*, the Bureau is applying and interpreting its standards to give itself unbounded discretion to reject applications that don't suit its tastes. It agreed in the *Zucco* settlement to reject a request only if it "contains" a word, combination, or phrase that is profane, obscene, sexually explicit, or scatological, and there appears to be no dispute that "F46 LGB" does not "contain" any such word, combination or phrase.

But the Bureau has breached that settlement by unilaterally expanding the universe of combinations it claims the discretion to reject. Its March 11 e-mail to Mr. Wonser shows that it now also prohibits words, combinations and phrases that do not actually contain anything profane, obscene, sexually explicit, or scatological, but are acronyms, abbreviations, and slang for different words that are profane, obscene, sexually explicit, or scatological. And the Bureau doesn't stop there. Its March 22 e-mail shows that it also prohibits any words, combinations, or phrases if it concludes that there could be a "common perception" that they are acronyms, abbreviations, or slang for a different word that is profane, obscene, sexually explicit, or scatological.

And its March 23 e-mail shows that it doesn't even require that perception to be common; a plate can be denied merely because it "is perceived" to be an acronym, abbreviation or slang for a word, combination or phrase that is profane, obscene, sexually explicit, or scatological.

---

[3] *Matwyuk v. Johnson*, 22 F. Supp. 3d 812, 824 (W.D. Mich. 2014).

[4] *Matwyuk* at 829. The court subsequently permanently enjoined the state from enforcing those standards and ordered it to pay tens of thousands of dollars in attorney's fees.

[5] *Hart v. Thomas*, 422 F. Supp. 3d 1227, 1234 (E.D.Ky.2019).

Beyond all that, its final decision on May 13 rejected Mr. Wonser's application due to the mere "potential perception of inappropriateness." Whose perception? How much potential? What makes a request "inappropriate"? The Bureau never says, and as far as we can tell, it doesn't know the answer itself.

On top of all this, the Bureau is predictably failing to apply these rules consistently. It has approved similar or identical combinations for other applicants, and it admits that it will recall those combinations for some drivers while permitting others to keep them.

But even a consistent, categorical rule would not permit the Bureau to reject "F46 LGB." Besides being reasonable, its standards must also be viewpoint neutral. In *Byrne v. Rutledge*, 623 F.3d 46 (2d Cir. 2010), a driver sued the Vermont secretary of transportation for refusing to issue a vanity plate reading "JN36TN" as a violation of its rule against any religious references.[6] The trial court held that the rule was a permissible ban on a specific subject, but the Second Circuit reversed, holding that it is unreasonable to deny applications for "objectively meaningless" combinations based on subjective assessments of their viewpoint:

> Byrne applied for the plate JN36TN, which the state refused to issue because Byrne's supplied meaning indicated his intent to refer to the Biblical passage John 3:16. However, as Byrne argues, and the record supports, Vermont would have approved that *very same* combination had Byrne supplied a secular meaning for it … Of course, no one other than Byrne himself and the DMV clerk processing his application would know the difference — to all outside observers, the issued plate would appear the same irrespective of Byrne's supplied meaning.[7]

Like in *Byrne*, the Bureau's rejection of Mr. Wonser's application is neither reasonable nor viewpoint neutral, and it violates its own agreement in *Zucco*. "F46 LGB" is an "objectively meaningless" combination whose meaning depends on the reader's own background and perspective. To some, "F46" is a paralympic classification. To others, it may be an automobile, aircraft, or naval vessel. But regardless of your perspective, "F46 LGB" is objectively devoid of obscenity, profanity, or scatological language. Perhaps that alphanumeric sequence makes the Bureau's censors imagine President Biden having sex, but that is grounds for counseling, not for violating Mr. Wonser's right to free speech.

Mr. Wonser demands that the Bureau reverse its position, approve his application, and agree to restrict itself to objective, constitutionally defensible criteria in evaluating applications going forward. Given the outcome in *Zucco*, we hope there will be no need for litigation. If that is not the case, Mr. Wonser is prepared to seek both injunctive and monetary relief in the very near future.

Please let us know by July 15 whether the Bureau agrees to make these corrections. If you have any questions about our demand, you may reach me at the number above.

Sincerely,

---

[6] *Byrne v. Rutledge*, 623 F.3d 46, 49 (2d Cir.2010).

[7] *Byrne* at 60.

WONSER_003717

Brian D. Bardwell
Founder, Speech Law LLC

WONSER_003718