IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY WONSER, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:24-CV-02160 |
| | : | |
| v. | : | Judge Sarah D. Morrison |
| | : | |
| CHARLES L. NORMAN, et al., | : | Magistrate Judge |
| | : | Elizabeth A. Preston Deavers |
| Defendants. | : | |

**DEFENDANTS' MEMO CONTRA MOTION FOR PRELIMINARY INJUNCTION**

**I.      Statement of Facts**

Mr. Wonser applied for a vanity license plate reading "F46 LGB" on March 10, 2022, through the Ohio BMV. (Answer, Ex. 1A (Doc. 4-1), PageID ## 42-43). His application was denied by the BMV via electronic correspondence on March 11, 2022, because it did not conform to the BMV's custom plate review guidelines (the "Guidelines"), which bar acronyms and abbreviation of inappropriate content, including profanity. (*Id.*). Mr. Wonser appealed this on March 12, 2022, and his appeal was denied on March 24, 2022. (*Id.*, Exs. 1A, 1C, (Docs. 4-1, 4-3), PageID ## 41, 45).

Plaintiff filed suit on May 3, 2024, more than two years after his appeal was denied. (Complaint (Doc. 1)). Plaintiff admits that one plausible meaning of "F46 LGB" is "fuck 46 (the 46th president of the United States, Joe Biden), let's go Brandon."[1] (Complaint (Doc. 1), ¶85, PageID # 13). He alleges that the denial of his application violates his First Amendment rights, and further that the Guidelines implemented by the BMW in screening custom license plates are

---

[1] Defendants additionally understand the slogan "Let's Go Brandon" to be another way of saying "Fuck Joe Biden"; *see, e.g.,* Colleen Long, *How 'Let's Go Brandon' became code for insulting Joe Biden*, Associated Press (October 30, 2021, 5:08 p.m.), https://apnews.com/article/lets-go-brandon-what-does-it-mean-republicans-joe-biden-ab13db212067928455a3dba07756a160. Plaintiff's 2022 application was submitted shortly after the phrase became popular.

unconstitutionally vague. (*Id.*, Prayer for Relief §§A, B, PageID # 17). He alleges that Defendants "knowingly" participated in a criminal conspiracy to deprive him of his constitutional rights. (*Id.*, ¶152). Now, Plaintiff has moved for a preliminary injunction barring Defendants from enforcing the Guidelines altogether and requiring Defendants to approve Plaintiff's 2022 application. (Motion for Preliminary Injunction (Doc. 12), PageID # 102) (hereinafter "PI Motion").

## II. Standard of Review

Ordinarily, a motion for preliminary injunction requires a district court to consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Dutton v. Shaffer*, 6th Cir. No. 23-5850, 2024 U.S. App. LEXIS 20822, at *5 (Aug. 15, 2024). Generally, when the question of success on the merits pertains to a constitutional violation, the first element is the primary consideration. *Id.* ("[w]hen a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, the likelihood of success on the merits will often be the determinative factor.") (quoting *Jones v. Caruso*, 569 F.3d 258, 265-66 (6th Cir. 2009)).

## III. Law and Argument

A. **PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS, AS SET FORTH IN DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, BECAUSE HE HAS SUED OUTSIDE THE STATUTE OF LIMITATIONS AND THE GUIDELINES ARE CLEAR AND WERE APPLIED TO HIS REQUEST IN A CONSTITUTIONAL MANNER.**

   i. **Plaintiff's claim is outside the statute of limitations.**

Plaintiff's motion for preliminary injunction declines to address the fact that his complaint is filed outside the applicable statutes of limitations. As set forth in Defendants'

Motion for Judgment on the Pleadings, the applicable statute of limitations for claims brought under 42 U.S.C. § 1983 in Ohio is two years. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); R.C. 2305.10; *see also* Defendants' Motion for Judgment on the Pleadings (Doc. 9), PageID ## 64-66 (hereinafter "12(c) Motion") (addressing merits as to statutes of limitations and laches). The statute of limitations period "begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Id.* (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991)). Further, as to Plaintiff's third claim, "it is well settled that" the applicable statute of limitations for claims brought under R.C. 2307.60 is one year. *Seymour v. Miller*, S.D. Ohio No. 2:21-cv-313, 2022 U.S. Dist. LEXIS 4091, at *7 (Jan. 10, 2022).

Here, Plaintiff knew or had reason to know that his application was denied when the BMV informed him via email on March 11, 2022. (Answer, Ex. 1A, ECF 4-1, PageID 42-43). March 11, 2022, is two years, 1 month, and 22 days before the Complaint was filed on May 4, 2024. For comparable reasons, the doctrine of laches bars Plaintiff from recovering as well. (*See* 12(c) Motion, PageID # 65).

Even Plaintiff's appeal was denied more than two years before the Complaint was filed. Plaintiff's appeal was denied on March 24, 2022 – two years, 1 month, and 9 days before the Complaint was filed. For this reason, Plaintiff is totally unable to show any likelihood of success on the merits.

> **ii. Plaintiff's First Amendment rights were not violated since the First Amendment does not protect meaningless strings of characters, nor does it require Defendants to publish homophobic slurs or profanity.**

By Plaintiff's own admission, the requested license plate communicates either a slogan containing profanity or a "homophobic slur." (Complaint (Doc. 1), ¶¶84-85, PageID # 11). He

does not have a First Amendment right to display profanity or slurs on a government-issued license plate.

As Plaintiff points out, federal caselaw differs on whether the alphanumeric messages on custom plates constitute government speech. Numerous courts have held that they do, while others have held that they are instead private speech in a nonpublic forum. (*See* 12(c) Motion, PageID # 62) (listing cases). This Circuit has not, to Defendants' knowledge, conclusively ruled on the issue, though, as Defendants argue in their 12(c) Motion, the reasoning with respect to custom license plates in *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 201, 135 S. Ct. 2239, 192 L. Ed. 2d 274 (2015) is similarly applicable to this context (12(c) Motion, PageID # 62).

If the alphanumeric messages on custom license plates are government speech, the First Amendment affords Plaintiff no relief. *Pleasant Grove City v. Summum*, 555 U.S. 460, 467, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009).[2] If they are instead nonpublic speech, "most" courts siding with this interpretation have held that license plates are a nonpublic forum. *Ogilvie v. Gordon*, N.D.Cal. No. 20-cv-01707-JST, 2020 U.S. Dist. LEXIS 259377, at *16 (July 8, 2020). Government restrictions on speech in a nonpublic forum are permissible provided they are reasonable and viewpoint neutral. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 at 806, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985).

Here, the restrictions applied to Plaintiff meet both requirements. It is reasonable to restrict profanity from display in public spaces. Everyone can see license plates. Putting profanity inside of acronyms does not change its meaning or make it more appropriate. It is,

---

[2] The Court in *Pleasant Grove* noted, however, that "[t]his does not mean that there are no restraints on government speech. For example, government speech must comport with the Establishment Clause." *Pleasant Grove*, 555 U.S. at 460.

additionally, viewpoint-neutral to do so, because profanity is not a viewpoint. The same viewpoint can be expressed in more or less profane ways.

On the question of whether the Guidelines are reasonable, Plaintiff argues that Defendants' "censorship regime [***] fails even the most forgiving analysis for mere 'reasonableness.'" It appears that Plaintiff has embarked on a fairly large-scale research project to identify approved or rejected license plates which he considers inconsistent or unreasonable, and he has provided over two thousand pages of exhibits ostensibly supporting his research. (*See* PI Motion, PageID ## 103-2171). However, some of Plaintiff's records appear to contradict his claims in the brief. For instance, he claims that "JIZZ" was approved and "SKEET" was not, but then provides a record indicating "JIZZ" was in fact denied. (PI Motion, PageID ## 94, 2175). Plaintiff mischaracterizes "NOHOMO" as permitted, when in fact the evidence he provides indicates it is only available to be applied for, "subject to approval" – i.e., it has not yet been approved, because no one has requested it. (PI Motion, PageID ## 99, 2204, 2221). Plaintiff incorrectly states that the Guidelines were applied to prohibit "NOODS," when in fact it was approved. (PI Motion, PageID ## 89, 229). But this is all immaterial. None of the "inconsistencies" Plaintiff identifies establish that it is unreasonable to bar profanity from custom license plates – only that it is impossible to do so perfectly. It is in the nature of language that marginal cases will arise – this does not mean it is automatically and always unreasonable to regulate the manner in which language is used.

On the question of whether the Guidelines are viewpoint-neutral, Plaintiff argues that they discriminate against the viewpoint of "giving offense." (PI Motion, p. 24 (citing *Matal v. Tam*, 582 U.S. 218, 243, 137 S.Ct. 1744, 198 L.Ed.2d 366 (2017))). This mischaracterizes the manner in which the Guidelines have been applied and misstates their actual content. The

Guidelines do not forbid messages on the grounds that they are "offensive." The only mention of the word "offensive" in the Guidelines is the provision barring messages that are "so offensive that they could reasonably be expected to provoke a violent response from viewers without additional comment." (Complaint (Doc. 1), ¶31, PageID #6). This provision was not applicable to Plaintiff's request (and the reasonable basis for it should be clear). Plaintiff's application was not denied because it was offensive – it was denied because it contained the word "fuck," which a person of reasonable intelligence would be aware is profanity. Plaintiff cites as further evidence of viewpoint discrimination the fact that racial slurs such as "POLACK," "BEANER," and "SLANT I" are barred, but references to ethnicity such as "POLISH3," "MEXICAN," and "ASIAN" are permitted. (PI Motion, PageID # 98). In response to this, Defendants would simply note that racial slurs are not viewpoints.

Further, to the extent Plaintiff intends to litigate any or every license plate application referenced in his two thousand pages of exhibits, or to challenge the Guidelines *as applied* in all cases to all residents of the State of Ohio, he lacks standing to do so. He has suffered no material injury from Defendants' decision to deny the custom license plate applications of others.

  **iii. The Guidelines are not unconstitutionally vague because the meaning of the terms is apparent to a person of ordinary intelligence, and they are not written so as to authorize or encourage arbitrary and discriminatory enforcement.**

Plaintiff's second claim is that the guidelines are unconstitutionally vague. "A party's claim that a statute is unconstitutionally vague faces a high bar, as few statutes meet the void-for-vagueness threshold." *Mt. Pleasant Blacktopping Co. v. Greene Cnty*, No. 21-3684, 2022 U.S. App. LEXIS 12057, at *8 (6th Cir. 2022). Vagueness is unconstitutional if it "(1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or "(2) authorizes or even encourages arbitrary and discriminatory enforcement." Id.

The meaning of "profanity," as a word in the English language, is unambiguous. Although every definition is subject to marginal cases, most members of the general population have a sense of what words should not, for instance, be said to children. Most people have a reliable sense of which words are bad words, and Defendants would contend that the word "fuck" is a particularly unambiguous case. The meaning of "acronym" is, to Defendants' knowledge, similarly clear.

Although the remaining portions of the Guidelines were not applied to Plaintiff's application, they also provide a person of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited, and do not authorize or encourage arbitrary or discriminatory enforcement. This Court appears to have reached that conclusion previously, having brokered the settlement in which the Guidelines were created. *Zucco v. Caltrider*, Case No. 2:01-cv-01270 (S.D. Ohio); *see* 12(c) Motion, PageID ## 58, 70. At most, Plaintiff's allegations in the complaint and additional evidence provided in his Motion for Preliminary Injunction support the argument that the Guidelines have been inconsistently enforced. (Complaint, ECF 1, ¶¶ 71-80, PageID 10-11). But "allegedly arbitrary or inconsistent enforcement of a regulation whose terms are unambiguous does not render the regulation impermissibly vague." *Mt. Pleasant Blacktopping Co. v. Greene Cnty*, No. 21-3684, 2022 U.S. App. LEXIS 12057, at *9 (6th Cir. 2022); *see also 600 Marshall Entm't Concepts, LLC v. City of Memphis*, 705 F.3d 576, 586-87 (6th Cir. 2013). "Allegedly arbitrary or inconsistent enforcement" with respect to the Guidelines is all Plaintiff has claimed. Accordingly, there is no likelihood of success on the merits as to this claim.

**B.** **To the extent Plaintiff seeks to suspend the Guidelines altogether, rather than merely an injunction ordering issuance of his requested plate, third parties would be substantially harmed by an injunction and the public interest would be seriously hindered.**

When ruling on a motion to grant a preliminary injunction, the question of whether the public interest is served and the question of whether issuance of the injunction will cause substantial harm to others (the third and fourth elements of the inquiry) "'merge' when the government is a party." *OPAWL v. Yost*, 6th Cir. No. 24-3768, 2024 U.S. App. LEXIS 25370, at *32 (Oct. 8, 2024) (citing *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009)). This circuit has recognized that "[t]he 'inability to enforce its duly enacted [law] clearly inflicts irreparable harm on the State.'" *Yost* at *32 (quoting *Abbott v. Perez*, 585 U.S. 579, 602, 138 S.Ct. 2305, 201 L.Ed.2d 714 (2018)).

To the extent Plaintiff seeks an injunction forcing issuance of the license plate he has requested, if he (somehow) establishes a violation of his First Amendment rights, he can meet the other elements of the preliminary-injunction standard. But elements two through four of the preliminary-injunction standard would not be met, to the extent Plaintiff seeks an injunction applicable beyond his own request. Element two – "the movant would suffer serious harm absent an injunction" – would not be met, because Plaintiff suffers no irreparable harm from the Guidelines being applied to other custom plate requests. Elements three and four, merged together, would not be met because the public interest would be substantially harmed if Defendants are unable to screen custom plate applications in accordance with the Guidelines. Suspending the Guidelines altogether would be profoundly destructive. Defendants relied on the Guidelines in rejecting plate applications such as "POOOP," "SHO TITZ," "CVNT," and "ANAL SEX." (PI Motion, PageID ## 2173-74, 2178, and 2190). Total suspension of the Guidelines would leave Defendants with no guidance whatsoever on how custom plate

applications should be processed. Defendants would be forced to either permit all plates, reject all plates, or develop their own informal standards for approval – and it is precisely the fact that Plaintiff has perceived informality in the approval process which he contends supports the existence of a constitutional violation in the first place. For this reason, suspension would be wholly unmanageable – at best, it would exacerbate the exact thing Plaintiff perceives as a problem.

## IV. Conclusion

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's request for a preliminary injunction in its entirety.

Respectfully submitted,

*/s/ Donald C. Brey*
Donald C. Brey (0021965), *Trial Counsel*
Ryan C. Spitzer (0093515)
Gareth A. Whaley (0102156)
**ISAAC WILES & BURKHOLDER, LLC**
Two Miranova Place, Suite 700
Columbus, Ohio 43215-5098
dbrey@isaacwiles.com
rspitzer@isaacwiles.com
gwhaley@isaacwiles.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

On November 4, 2024, a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic system. Parties may access this filing through the Court's system.

*/s/ Donald C. Brey*
Donald C. Brey (0021965)