IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JEFFREY WONSER,**<br>　　　　　　*Plaintiff,*<br>v.<br>**CHARLES L. NORMAN,** *et al.*,<br>　　　　　　*Defendants.* | Case No.: 2:24-cv-02160<br><br>Judge Sarah D. Morrison<br><br>Magistrate Judge Elizabeth A. Preston Deavers |
| **REPLY IN SUPPORT OF JEFFREY WONSER'S MOTION FOR A PRELIMINARY INJUNCTION** | |

　　　　Plaintiff Jeffrey Wonser respectfully submits this reply in support of his motion for a preliminary injunction barring Defendants from enforcing their rules for vanity license plates and requiring them to approve his application for a license plate reading "F46 LGB."

　　　　As laid out below, Defendants do not dispute that: (1) they rejected at least one of Mr. Wonser's applications within Section 1983's two-year statute of limitations; (2) the rule they relied on to reject that application is unconstitutionally overbroad; or (3) that rule discriminates on the basis of viewpoint.

　　　　Mr. Wonser is therefore likely to succeed on the merits of his claims, and the Court should grant an injunction to prevent Defendants from inflicting any further injury going forward.

**LAW & ARGUMENT**

**I. Because Mr. Wonser's claims were timely filed, the statute of limitations is not a barrier to entering a preliminary injunction.**

**A. Mr. Wonser's Section 1983 claims are timely because they allege at least one First Amendment violation no earlier than December 2022.**

"In Ohio, the statute of limitations for filing § 1983 claims is two years." *Black-Hosang v. Ohio Dep't of Pub. Safety*, 96 F. App'x 372, 374 (6th Cir. 2004).

Here, the Complaint timely raises claims against each Defendant:

- The Complaint alleges that Defendant Norman and Defendant Strickrath violated Mr. Wonser's First Amendment rights by (1) rejecting his vanity-plate application when they cut off the appeal process and processed his refund on May 20, 2022;[1] (2) refusing his subsequent application, through counsel, to approve his message;[2] (3) refusing to register his plate the next time he applied for it;[3] and (4) refusing his subsequent application, through counsel, to approve his message.[4]

- The Complaint alleges Defendant Norman and Defendant Wilson violated Mr. Wonser's First Amendment rights again by rejecting his second vanity-plate application.[5] Although the Complaint does not specify the date on which this occurred, it does say that it was "after" Wilson took office in "December 2022."[6]

- Mr. Wonser's Amended and Supplemental Complaint, though not yet accepted by the Court, notes that Defendant Norman and Defendant Wilson violated Mr. Wonser's First Amendment rights again most recently on November 1, 2024.[7]

Mr. Wonser filed his Complaint on May 3, 2024. Because all these events occurred less than two years before that date, Mr. Wonser's claims against each Defendant are timely filed.

---

[1] Complaint, ¶¶ 106–07 (ECF #1).
[2] Complaint, ¶¶ 108–09.
[3] Complaint, ¶¶ 111–13.
[4] Complaint, ¶¶ 114–16.
[5] Complaint, ¶¶ 111–17.
[6] Complaint, ¶¶ 110–11.
[7] Am. Compl., ¶¶ 200–02 (ECF #20).

> **B.     Mr. Wonser's claims against Defendants Norman and Stickrath are timely because the statute of limitations was tolled under the continuing-violation doctrine.**

Defendants argue Mr. Wonser's claims accrued not with the end of his negotiations over his first application, but with the denial of Mr. Wonser's first appeal on March 24, 2022. While that argument, if accepted, would put the accrual date of Mr. Wonser's claims against Defendant Norman and Defendant Stickrath, *arising from the first application*, outside the default limitations period, those claims would nonetheless remain viable. "A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment." *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997).

The Sixth Circuit therefore tolls the statute of limitations for otherwise-untimely filed claims that are part of a "continuing violation" of the law. To prove a continuing violation, a plaintiff must show three things: "(1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009).

In *Kuhnle Bros.*, for instance, a trucking company alleged that a county resolution violated its right to intrastate travel by banning it from a road it needed to access a customer's facilities. The trial court granted summary judgment for the county, holding that the company's Section 1983 claims were time-barred because they were filed more than two years after the resolution passed. But the Sixth Circuit reversed, holding that if the county was violating the company's right to travel, "then each day that the invalid resolution remained in effect, it inflicted 'continuing and accumulating harm.'"

> Geauga's invalid through-truck traffic ban continued after the date of enactment of Resolution 91–87; injury to Kuhnle continued to accrue; and further injury to Kuhnle could have been avoided if the County had repealed the resolution. Thus … Kuhnle suffered a new deprivation of constitutional rights every day that Resolution 91–87 remained in effect, rather than merely suffering additional harm from a prior unconstitutional act. Since the last alleged deprivation occurred less than two years before Kuhnle filed its complaint, Kuhnle's action is not time-barred.
>
> *Kuhnle Bros.*, 522.

The same is true here. First, the evidence shows that Defendants are engaging in continuing wrongful conduct. Defendants rejected Mr. Wonser's license plate based on the viewpoint it expressed when he first applied in 2022,[8] and they did the same thing when he applied again on April 22, 2024.[9] For proof that their viewpoint discrimination continues even today, the Court need only visit Defendants' website, which shows that they will give you a license plate identifying yourself if you are a "STR8" "AMERICN" "ATHEIST" but not if you are a "GAY" "RUSSIAN" "JEW."[10]

Second, the constitutional injury to Mr. Wonser accrues continuously, as Defendants continued to enforce their censorship regime past the date of the initial application, past the date of the initial denial, past the date of the rejected appeal, past the date of counsel's first demand, past the date of Mr. Wonser's second application, past the date of counsel's second demand, and straight through to today. Each day that passes is therefore a day that Defendants are infringing Mr. Wonser's fundamental rights. *Kuhnle Bros.*, 522 (quoting *Baker v. F & F Inv. Co.,* 489 F.2d 829 (7th Cir.1973)) ("[A] new injury was inflicted on [Mr. Wonser] each day … Consequently, a new limitations period began to run each day as to that day's damage."). Likewise, every time

---

[8] Declaration of Jeffrey Wonser, ¶ 6 (ECF #12-51).
[9] Wonser Decl., ¶¶ 8–9.
[10] https://bmvonline.dps.ohio.gov/bmvonline/oplates/specializedplates/1

Defendants impose their censorship regime on *other* drivers, they injure Mr. Wonser by infringing on his right to *receive* their speech. *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information.").

Third, had Defendants at any time ceased their wrongful conduct, further injury to Mr. Wonser would have been avoided. The only thing standing between Mr. Wonser and his ability to both publish his message and receive the messages of others is Defendants' continued enforcement of their censorship regime. If they ended it—or merely reworked it to comply with the First Amendment—Mr. Wonser's injuries would end.

Because Defendants' years-long and ongoing refusal to respect the First Amendment inflicts a new injury every day by prohibiting Mr. Wonser from publishing his message to other drivers and by prohibiting them from publishing their messages to him, all his Section 1983 claims are timely.

### C. Mr. Wonser's overbreadth claim is timely because he has third-party standing to challenge the application of the censorship regime to any driver, not just himself.

Even if Mr. Wonser had last applied for a vanity plate forty years ago, he could nonetheless proceed with his case because he has third-party standing to pursue his overbreadth claim.

"In the First Amendment context, litigants are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988).

In *Am. Booksellers Ass'n*, an association challenged a statute that would have required members to shoulder additional costs to comply with a state law prohibiting minors from purchasing certain types of non-obscene media. The state moved to dismiss for lack of standing, but the district court held that the association had standing, and the Supreme Court affirmed, holding that in the First Amendment overbreadth context, standing requires a constitutional violation and the "irreducible minimum" of an injury in fact; the booksellers satisfied that test because they "alleged an infringement of the First Amendment rights of bookbuyers" and alleged that they themselves were injured by that infringement.

Mr. Wonser satisfies both criteria. He has alleged (1) that the BMV's censorship regime is infringing on the rights of other drivers applying for vanity plates that the BMV considers "inappropriate," causing them to refrain from constitutionally protected expression; and (2) that their inability to express themselves injures him by infringing on his own right to receive information.

Mr. Wonser therefore has standing to litigate not only claims that the BMV has infringed on his right to disseminate his own message, but also claims that the BMV has been—and still is—similarly infringing the rights of third parties, as well.

### D. Mr. Wonser's claim under Ohio Rev. Code § 2307.60 is timely because that statute is remedial, not punitive.

Defendants argue that Mr. Wonser's claim under Ohio Rev. Code § 2307.60 is time-barred, relying on this Court's holding in *Seymour v. Miller*, 2022 WL 93327 (S.D. Ohio Jan. 10, 2022), that "it is well settled" that such claims are subject to a one-year statute of limitations.

While that may have been true when *Seymour* was decided, it remained true for only about two months thereafter. State courts had for years summarily reached that same conclusion, but the Tenth District has since undertaken a thorough analysis of the statute and concluded that

Ohio Rev. Code § 2307.60 "is a remedial statute subject to the six-year statute of limitations in R.C. 2305.07(B) rather than a penalty statute governed by the one-year statute of limitations in R.C. 2305.11(A)." *Harris v. Cunix*, 2022-Ohio-839, ¶ 27 (10th Dist.).

And, as this Court already knows, both it and the Northern District have since endorsed that conclusion, as well. *Hi-Vac Corp. v. Coley*, 2024 WL 4266014, at *12 (S.D. Ohio Sept. 23, 2024) ("[T]he Court concludes that § 2307.60 is remedial in nature, such that a six-year statute of limitations applies."); *Niederst v. Minuteman Cap., LLC*, 2024 WL 3522413, at *15 (N.D. Ohio July 24, 2024).

Claim 3 is therefore not barred by the statute of limitations.

## II. Because Mr. Wonser is likely to succeed on the merits of his First Amendment claims, the Court should enjoin its enforcement.

### A. Mr. Wonser is likely to succeed on the merits because there is no evidence that vanity plates are government speech.

"[W]hile the government-speech doctrine is important—indeed, essential—it is a doctrine that is susceptible to dangerous misuse. If private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints. For this reason, we must exercise great caution before extending our government-speech precedents." *Matal v. Tam*, 582 U.S. 218, 235 (2017).

In *Matal*, an Asian-American band called "The Slants" sought to trademark its name, which it had adopted as a means of reclaiming a slur directed at its members. The Patent and Trademark Office refused its application, relying on a statute prohibiting the registration of marks that "disparage" people or "bring them into contempt." A panel of the Federal Circuit upheld the denial, but the Supreme Court struck down the statute as a Speech Clause violation, rejecting the government's argument that placing private speakers' messages registered on

government rolls made them government speech, based on a highly fact-intensive analysis aimed at ensuring the government was not putting that doctrine to "dangerous misuse."

Among other facts supporting its conclusion, the Court noted:

1. "The Federal Government does not dream up these marks."
2. "The Federal Government does not … edit marks submitted for registration."
3. "Except as required by … 15 U.S.C. § 1052(a), an examiner may not reject a mark based on the viewpoint that it appears to express."
4. "[U]nless that section is thought to apply, an examiner does not inquire whether any viewpoint conveyed by a mark is consistent with Government policy."
5. "[U]nless that section is thought to apply, an examiner does not inquire whether any viewpoint conveyed by a mark … is consistent with that expressed by other marks already on the principal register."
6. "Instead, if the mark meets the Lanham Act's viewpoint-neutral requirements, registration is mandatory."
7. "And if an examiner finds that a mark is eligible for placement on the principal register, that decision is not reviewed by any higher official unless the registration is challenged."
8. "If the federal registration of a trademark makes the mark government speech, the Federal Government is babbling prodigiously and incoherently."
9. "If the federal registration of a trademark makes the mark government speech, the Federal Government is … saying many unseemly things."
10. "If the federal registration of a trademark makes the mark government speech, the Federal Government is … expressing contradictory views."
11. "If the federal registration of a trademark makes the mark government speech, the Federal Government is … unashamedly endorsing a vast array of commercial products and services."
12. "If the federal registration of a trademark makes the mark government speech, the Federal Government is … providing Delphic advice to the consuming public."

*Matal*, 235–36.

Here, the record demonstrates that Ohio's vanity-plate program is not government speech because all the same facts are true:

1. Defendants admit that they are not the ones dreaming up vanity plate messages, which "come from the registrants, rather than from the BMV itself."[11]
2. Defendants admit that although it may propose substitute messages, the BMV "does not unilaterally modify custom plate requests."[12]
3. Defendants admit they do not "their custom plate message screening process does not reject messages which comply with the Screening Guidelines solely based on the viewpoint expressed."[13]
4. Defendants admit that "unless they think one of the Screening Guidelines applies to a Message, BMV employees do not inquire into whether any viewpoint conveyed by a Message is consistent with Government policy."[14]
5. Defendants admit that "unless they think one of the Screening Guidelines applies to a Message, BMV employees do not inquire into whether a Message is consistent with Messages the BMV has previously registered."[15]
6. Defendants admit that "if a Message meets all the BMV's requirements, the BMV does not have discretion to reject it."[16]
7. Defendants' screening guidelines indicate that registration decisions are not reviewed by any higher official if a BMV employee initially finds that a message is ineligible for registration.[17]
8. If the vanity-plate program is government speech, the government is babbling prodigiously and incoherently. Defendants admit approving messages that are "cryptic, and sometimes completely indecipherable" but would have the Court

---

[11] Norman Request for Admission #30, ECF #18-1.
[12] Norman Request for Admission #31.
[13] Norman Request for Admission #32.
[14] Norman Request for Admission #33.
[15] Norman Request for Admission #34.
[16] Norman Request for Admission #35.
[17] Special Plate Screening Guidelines, (ECF #20-1).

believe that Governor DeWine is telling people "014587," "CBSP," "M7XQR12" and "ZYAYYDS."[18]

9. If the vanity-plate program is government speech, the government is saying many unseemly things. Defendants do not dispute the authenticity of Mr. Wonser's list of approved vanity plates, which—by their theory—indicates that Governor DeWine is trying to raise awareness of "A55BUTT," promote "ANAL SEX," encourage drivers to "GET NAKD," and dub himself "2SEXY4U."[19]

10. If the vanity-plate program is government speech, the government is expressing contradictory views. Defendants admit the BMV's approved messages "are often contradictory," but want the Court to believe that they mean Governor DeWine is simultaneously saying "GO BUCKS" and "GO BLUE"; that Ohio is "GODLY" but also "GODLESS"; that people should both "LUV DIRT" and "H8 DIRT"; and that they should "VAXN8" but still be "ANTIVAX."[20]

11. If the vanity-plate program is government speech, the government is unashamedly endorsing a vast array of commercial products and services. For instance, Defendants would have the Court believe that Governor DeWine is pushing drivers to "BUY ART," "BUY BTC," "BUY LAND," "BUY RIMS," "BUY TRUX," "BUY GMC," "BUY DIRT," "BUY DOGE," "and BUY TSLA."[21]

12. If the vanity-plate program is government speech, the government is providing Delphic advice to the public. For instance, Defendants would have the Court believe that Governor DeWine is counseling motorists to "BE CURLY," "BE JUICY," "BE SALTY," "BE A LOLA," "BE IT," "BE MEEP," "BE WATER," "BE A SITH," "BE STANG," "BE A BETH," "BE A WOLF," "BE EVENT," "BE HIPPY," "BE RICE," "BE THE 10," "BE AND BE," and "BE EZY."[22]

Given the neat parallels between this case and *Matal*, Defendants focus instead on *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015). In *Walker*, the Texas Department of Motor Vehicles refused a nonprofit group's application to create a license plate

---

[18] Complaint and Answer (ECF #4), ¶ 17.
[19] BMV list of issued special-reserve plates, WONSER_002065–2434 (ECF #12-46).
[20] Complaint and Answer, ¶ 19.
[21] BMV list of issued special-reserve plates, WONSER_002230–2304.
[22] BMV list of issued special-reserve plates, WONSER_002179–2230.

design with the nonprofit's logo on it, based on its conclusion that the public reasonably found the design offensive. The Fifth Circuit held that the refusal to issue plates with that design violated the First Amendment, but the Supreme Court reversed, holding that the Speech Clause had no bearing on the analysis; instead, it concluded that the specialty-plate program was government speech, based on a variety of facts specific to the history of license-plate designs in Texas, noting:

1. that Texas had historically "selected various messages to communicate through its license plate designs."
2. that those messages "are often closely identified in the public mind" with the state.
3. that other people who see specialty license plates "routinely—and reasonably—interpret them as conveying some message" from the state.
4. that "Texas maintains direct control over the messages conveyed on its specialty plates," including the "alphanumeric pattern."

*Walker*, 211–13.

Despite invoking this test, Defendants never suggest it would yield the same result in this case. They flatly conclude that "the reasoning is identical" in *Walker* and in this case, without walking through any of that reasoning.[23] They merely free-ride on *Walker*'s analysis of the Texas specialty-plate program, rather than acknowledging that the history of Ohio's vanity-plate program points in the opposite direction:

1. Rather than offering evidence that Ohio has historically selected its own messages to convey through the unique alphanumeric combinations on each vehicle's license plate, they admit that license plates historically bore combinations "with no particular meaning," and that this changed when they began allowing drivers "to create messages of their own choosing."[24]

---

[23] Mot. for J. on the Pleadings, 6.
[24] Complaint and Answer, ¶¶ 12–13.

2. They offer no evidence that the messages on vanity plates are closely identified in the public mind with the state.

3. They offer no evidence that the people who see vanity license plates routinely or reasonably interpret them as messages from the state.

4. Rather than maintaining direct control over the messages conveyed on their specialty plates, they admit they instead have a policy "allowing vehicle owners to customize the combinations on their license plates."[25]

If there is a single piece of actual evidence suggesting that Ohio's vanity-plate program is government speech, Defendants have declined to share it. More likely, then, this is another case of the government agency exploiting "a doctrine that is susceptible to dangerous misuse" so it can "silence or muffle the expression of disfavored viewpoints." *Matal*, 235.

The Court should not play along. Because there is no evidence that Ohio's vanity plates are government speech, the Court should afford those messages the full protection of the First Amendment.

**B. Mr. Wonser is likely to succeed on the merits because there is no evidence that Defendants' censorship regime satisfies the test for speech restrictions in a nonpublic forum.**

As laid out in Mr. Wonser's motion, the First Amendment demands that speech restrictions in a nonpublic forum be reasonable and viewpoint neutral. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985).[26]

Defendants argue that their censorship regime is reasonable for only two reasons: First, because "some of Plaintiff's records appear to contradict his claims in the brief."[27] Second,

---

[25] Complaint and Answer, ¶ 13.

[26] Although Mr. Wonser maintains that the vanity-plate program is actually a designated public forum, he is treating it as a nonpublic forum for purposes of this motion. Because Defendants cannot satisfy even that more lenient test, doing so will allow the Court to avoid the more difficult and fact-intensive constitutional questions involved in making a forum designation.

[27] Mot. for J. on the Pleadings, 5.

because their inconsistent application of the rules does not establish "that it is unreasonable to bar profanity from custom license plates."[28]

Both arguments are red herrings, as both are built on the premise that Mr. Wonser has the burden of proving that Defendants' censorship regime violates the First Amendment. The opposite is true: "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 804 (2000).

Here, Defendants make no effort whatsoever to satisfy that burden. Confronted with "over two thousand pages of exhibits" supporting Mr. Wonser's claims,[29] they offer exactly zero pieces of evidence to demonstrate that their censorship regime is reasonable "in light of the purpose served by the forum." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985). Despite admitting that the purpose of the forum is to generate revenue for roadside parks,[30] they never even hint that the censorship regime somehow helps generate revenue for roadside parks.

Nor do they offer any evidence to establish that their restrictions are viewpoint neutral. Instead, they dispute the validity of an argument that Mr. Wonser never made; although they claim that his brief "argues that they discriminate against the viewpoint of 'giving offense,'"[31] Mr. Wonser never actually raised that argument. Instead, he provided evidence that Defendants are discriminating against all manner of *other* viewpoints, none of which they dispute.[32]

---

[28] Mot. for J. on the Pleadings, 5.
[29] Mot. for J. on the Pleadings, 5.
[30] Complaint and Answer, ¶ 13.
[31] Mot. for J. on the Pleadings, 5.
[32] Mot. for Prelim. Inj., 24–27.

For instance, Defendants do not dispute:

- that they discriminate on the basis of partisan affiliation, rejecting messages criticizing Democrats while approving similar messages criticizing Republicans.
- that they discriminate on the basis of race, rejecting "WHT PWR 6" while approving "BLK PWR 6."
- that they discriminate on the basis of sexual orientation, rejecting "HOMO" while approving "HETERO."
- that they discriminate on the basis of gender identity, rejecting "QUEER" while approving "CIS."
- that they discriminate on the basis of religion, rejecting "JEW" while approving "ATHEIST."
- that they discriminate on the basis of high-school football preferences, rejecting "TIGSUX" while approving "GO TIGER."

Defendants' refusal to address such blatant discrimination is particularly galling. They do not deny engaging in this discrimination. They do not purport to have any justification for this discrimination. They do not apologize for this discrimination. Most importantly, they refuse to stop engaging in this discrimination. Despite being put on notice of these discrepancies more than six months ago, their website shows that to this day, the BMV is still refusing to let drivers promote certain viewpoints on their license plates, despite allowing people with competing views to do so.

Because Defendants have offered precisely zero pieces of evidence to satisfy their burden, the Court should find that their censorship regime is neither a reasonable restriction on speech nor viewpoint neutral.

## C. Mr. Wonser is likely to succeed on the merits because Defendants do not dispute that the rule invoked against Mr. Wonser authorizes arbitrary and discriminatory enforcement.

A law is unconstitutionally vague if it "(1) defines the offense in such a way that ordinary people cannot understand what is prohibited, or (2) encourages arbitrary or discriminatory enforcement." *United States v. Kettles*, 970 F.3d 637, 650 (6th Cir. 2020).

"Even when speech is not at issue, the void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way. … When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012).

Defendants' vagueness analysis breaks their censorship regime into two distinct pieces. It first discusses what they sometimes refer to as "Guideline 1," which prohibits "profanity." While they argue that the "remaining portions" of the guidelines "do not authorize or encourage arbitrary or discriminatory enforcement," they never dispute that Guideline 1 *does*. This failure alone is fatal, as it concedes that Guideline 1 is unconstitutionally vague.

That concession flows naturally from the one argument they do make: that the prohibition on "profanity" is "unambiguous," presumably relying on the only definition found in *Black's*: "Obscene, vulgar, or insulting language … distinguished from mere vulgarity and obscenity by the additional element of irreverence toward or mistreatment of something sacred."[33]

If this is the "unambiguous" meaning of "profanity," though, Defendants are conceding that they have special rules against anti-religious speech, which would violate the Establishment

---

[33] PROFANITY, Black's Law Dictionary (12th ed. 2024).

Clause, the Free Exercise Clause, the Speech Clause, and the Equal Protection Clause. But if there exists some other definition that is not so patently offensive to the First Amendment, then "profanity" must be ambiguous. Defendants never address this discrepancy, nor do they address the obvious issues raised by their reliance on a definition that discriminates on the basis of reverence or irreverence toward religion. They merely spout a string of false *non sequiturs* to divert the Court's attention. They argue that:

1. "[M]ost members of the general population have a sense of what words should not, for instance, be said to children." It is unclear what this has to do with which words are profane. Mr. Wonser is not aware of any dictionary that defines "profanity" by reference to what children should hear. Nor is it clear, given Defendants' panic over the "profoundly destructive" effects of children seeing the word "POOOP," that they themselves have any reliable sense of what words children can safely be exposed to.[34]

2. "Most people have a reliable sense of which words are bad words." Again, this is neither relevant nor true. Mr. Wonser is not aware of any dictionary that defines "profanity" by reference to whether words are "good" or "bad." And Defendants themselves appear to have no real sense of what words are bad, given their refusal to issue license plates that say "MUSLIM," "RUSSIAN," and "NEGRO."[35]

3. "[T]he word 'fuck' is a particularly unambiguous case." Again, this is neither relevant nor true. Despite Defendants' insistence otherwise, the record is clear Mr. Wonser has not asked for a license plate that says "FUCK"; he has merely requested a license plate that has an F in it. Nor is the word unambiguously profane. Adopting Defendants' "unambiguous" definition, the word cannot be profane because it has no "element of irreverence" toward anything sacred.

4. "The meaning of 'acronym' is, to Defendants' knowledge, similarly clear." Again, this is neither relevant nor true. It is not relevant because there is no evidence—or even argument—that Defendants have any rule against "acronyms." And the meaning appears not to be clear, as Defendants themselves repeatedly misapply it to abbreviations and initialisms.

---

[34] Br. in Opp. to Mot. for Prelim. Inj., 8.
[35] Wonser Decl., ¶ 12.

Because Defendants concede that they rejected Mr. Wonser's application based on a rule that discriminates on the basis of religious viewpoint, and because they never dispute that their rules encourage arbitrary or discriminatory enforcement, Mr. Wonser is likely to succeed on the merits of his void-for-vagueness claim.

### D. Mr. Wonser is likely to succeed on the merits because Defendants do not dispute that their censorship regime is unconstitutionally overbroad.

"[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999).

As laid out in Section I.B. of Mr. Wonser's motion, the "plainly legitimate sweep" of Defendant's censorship regime pales in comparison to its impermissible applications—both actual and potential—because there are virtually no limits whatsoever on which messages Defendants may reject, given their authority to reject any message that can be *interpreted* as inappropriate.

Defendants do not dispute this—at all. Mr. Wonser is therefore likely to succeed on the merits of his overbreadth claim.

### III. Because Defendants cannot be "irreparably harmed" by the First Amendment, the Court should enjoin them from enforcing their censorship regime.

"When First Amendment rights are implicated, the factors for granting a preliminary injunction essentially collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights." *Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 485 (6th Cir. 2002).

Defendants concede that if their censorship regime violates the First Amendment, Mr. Wonser is therefore entitled to an injunction "forcing issuance of the license plate he has requested."[36] But in a strange bit of chutzpah, they say the Court should not enjoin them from enforcing their censorship regime against anyone other than Mr. Wonser because obeying the First Amendment would be "profoundly destructive" to the state's interests, leaving the BMV with "no guidance whatsoever" when deciding what vanity plates to issue, leading to such cataclysmic outcomes as a license plate that says "POOOP."[37]

Defendants base this argument on cases recognizing the importance of the state's interest in enforcing "duly enacted" laws when granting injunctions, *OPAWL v. Yost*, 118 F.4th 770, 785 (6th Cir. 2024). But they never connect that principle to their interest in enforcing *ad hoc* administrative rules that violate the First Amendment, which cannot by any stretch be considered "duly enacted." They only argue that in the absence of their vague, overbroad, and viewpoint-discriminatory rules, they would be left with only three options: "permit all plates, reject all plates, or develop their own informal standards for approval."[38]

None of these outcomes needs to concern the Court.

**First,** Defendants have offered no evidence that permitting every plate requested would actually lead to anything worse than more speech. People who want to share messages about themselves would be able to do so, and people who don't want to see those messages could keep their eyes on the road instead. Indeed, since the vanity-plate program is meant to advance the

---

[36] Br. in Opp. to Mot. for Prelim. Inj., 8.
[37] Br. in Opp. to Mot. for Prelim. Inj., 8–9.
[38] Br. in Opp. to Mot. for Prelim. Inj., 9.

State's interests by generating revenue for roadside parks,[39] ordering the BMV to permit more messages would *benefit* the State by generating more revenue.

**Second,** Defendants have offered no evidence that rejecting all plates would cause them any injury other than the temporary loss of revenue from vanity-plate applications, which would presumably mean only that they instead receive revenue from applications for standard license plates, which the State could transfer to the roadside-park fund if it wanted to.

**Third,** Defendants have offered no explanation why developing new standards would be harmful. Indeed, Mr. Wonser has been asking for new standards all along.[40] Defendants seem to misconceive the nature of Mr. Wonser's requested relief, suggesting that he is aggrieved by some "perceived informality" in the approval process.[41] In fact, he has never objected to their informality but rather to the free-speech violations they inevitably yield. Mr. Wonser has no objection to the BMV revising its standards, and neither should the Court; he merely asks that those standards respect the First Amendment.

The Court should therefore follow the binding mandate of the Sixth Circuit, which acknowledges that halting First Amendment violations is sufficient reason to grant an injunction, because First Amendment violations are never in the public's interest, and the government does not suffer a legally cognizable injury when its centuries-old penchant for censorship is thwarted. *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012).

## CONCLUSION

There are no meaningful barriers to enjoining Defendants from enforcing their unconstitutionally vague, overbroad, and viewpoint-discriminatory censorship regime. They do

---

[39] Complaint and Answer, ¶ 13.
[40] Complaint, ¶ 108.
[41] Br. in Opp. to Mot. for Prelim. Inj., 9.

not dispute that they rejected at least one of Mr. Wonser's applications within the last two years. They record makes plain that Mr. Wonser's message is private speech, rather than government speech. They do not dispute that their censorship regime is overbroad. They do not dispute that the rule applied to Mr. Wonser's message discriminates on the basis of viewpoint.

The Court should immediately grant an injunction requiring Defendants to issue Mr. Wonser's requested license plate and prohibit their censors from enforcing those rules against anyone else.

Respectfully submitted,

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiff Jeffrey Wonser*

### CERTIFICATE OF SERVICE

I certify that on November 11, 2024, this document was served on opposing counsel as provided by Fed. R. Civ. P. 5(b)(1).

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
*Attorney for Plaintiff Jeffrey Wonser*