IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY WONSER, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:24-CV-02160 |
| | : | |
| v. | : | Judge Sarah D. Morrison |
| | : | |
| CHARLES L. NORMAN, et al., | : | Magistrate Judge |
| | : | Elizabeth A. Preston Deavers |
| Defendants. | : | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS**

**I.    To the extent Plaintiff's incorporated arguments rely on matters outside the pleadings, they are not properly before the Court for purposes of this Motion.**

Plaintiff's three-paragraph memorandum in opposition to Defendants' Motion for Judgment on the Pleadings ("Opposition") (Doc. 24) reincorporates the arguments raised in his Reply in Support of Motion for Preliminary Injunction ("PI Reply") (Doc. 23)[1] as to the merits of his First Amendment and state-law claims. Opposition, Doc. 24, PageID # 2424. However, many of the arguments raised in his Reply rely on matters outside the pleadings; *see, e.g.,* PI Reply (Doc. 23), p. 4 fn. 8-10, p. 9 fn. 11-17, p. 10 fn. 19, 21-22 (PageID ## 2407, 2412-13).

Defendants' Motion for Judgment on the Pleadings ("Motion") (Doc. 9) raises exclusively legal questions and takes all allegations in the Complaint as true. To the extent Plaintiff seeks to use additional materials to prove facts in the Complaint, they are unnecessary, and to the extent Plaintiff seeks to use additional materials to prove facts outside the Complaint, they are irrelevant. Accordingly, Defendants request that this Court exclude all matters outside the pleadings in ruling on the Motion. *See Peterson v. Teodosio*, 34 Ohio St.2d 161, 166 ("Civ.

---

[1] Defendants note that Plaintiff's twenty-page PI Reply (Doc. 23) exceeds the ten-page limit for reply briefs set in Hon. Judge Morrison's tenth Standing Order: https://www.ohsd.uscourts.gov/sites/ohsd/files//1.2.24%20Standing%20Orders.pdf.

1

R. 12(C) is a continuation of the former statutory practice and presents only questions of law, and determination of the motion for judgment on the pleadings is restricted solely to the allegations in the pleadings.").

II. **All claims pled by Plaintiff fall outside the applicable statutes of limitations.**

   A. **Plaintiff does not allege a violation of his First Amendment Rights within the applicable statute of limitations.**

Plaintiff points to four events alleged in the Complaint within the two-year statute of limitations that supposedly establish a timely violation of his First Amendment rights: the fact that his refund was processed on May 20, 2022; the fact that his "subsequent application, through counsel" was denied; "refusing to register his plate the next time he applied for it"; and refusing a *second* "subsequent application, through counsel" for approval of the vanity plate. PI Reply (Doc. 23), PageID ## 2405 (citing Complaint (Doc. 1), PageID # 14, ¶¶ 108-117).

None of these "subsequent" requests establish a "new violation" of the First Amendment. The law on this issue is clear – a claim under § 1983 accrues "when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff was fully aware that his application was denied for violating the Guidelines on March 11, 2022. Answer, Ex. A, Doc. 4-1, PageID ## 42-43. He could have sued on March 12, 2022. His subsequent attempts yielded no new information.

   B. **Plaintiff does not allege facts which would constitute a continuing violation.**

Plaintiff argues that denial of his vanity plate application constitutes an ongoing violation of his First Amendment rights. But there is no new conduct by Defendants which Plaintiff can point to which constitutes "continuing wrongful conduct." The mere fact that Defendants' past decision has long-term consequences is inadequate. Plaintiff only points to Defendants' declining

2

to grant his renewed requests for the vanity plate. PI Reply (Doc. 23), PageID # 2407. But declining to reconsider his denied application imposes no new injury on Plaintiff – before his subsequent applications were denied, he had no license plate stating "F46 LGB," and after his subsequent applications were denied, he also had no license plate stating "F46 LGB." Subsequent "denials" were not based on the content of Plaintiff's application, but rather were because it had already been added to the "invalid" plate list. Complaint, PageID # 14 ("The BMV had programmed its computers to automatically reject his message."). Plaintiff accessing Defendants' website is not "conduct" by Defendants at all, let alone "continuing wrongful conduct."

Plaintiff relies on *Kuhnle Bros. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 2009), in support of the claim that § 1983 claims can be filed to address ongoing violations. This is certainly accurate – however, only when there *is* an ongoing violation. The plaintiffs in *Kuhnle* were harmed by a law which remained enforced and effective well into the statute of limitations period. *Id.* ("Kuhnle suffered a new deprivation of its constitutional rights every day that Resolution 91-87 remained in effect, rather than merely suffering additional harm from a prior unconstitutional act."). But there is no statute or resolution imposing continuous harm on Plaintiff here. The Guidelines were applied to Plaintiff's application only twice: when his application was denied on March 11, 2022, and when his appeal was denied on March 24, 2022. The facts of Plaintiff's case are more comparable to those in *Howell v. Cox*, 758 Fed. Appx. 480 (6th Cir. 2018), in which a plaintiff alleged that he had been arrested in retaliation for his speech, violating his First Amendment rights (though the harm alleged in Plaintiff's case is far less than that in *Howell*). The Sixth Circuit dismissed the claim because, although Howell suffered substantial harm following his arrest, there were no continuing unlawful acts. *Id.* at 485 ("These

3

claims could have been brought on the night of Howell's arrest in 2012 – Cox did not need to commit any additional acts.").

Likewise, Plaintiff's claims could have been brought the day his application (or subsequent appeal) for a license plate stating "F46 LGB" was denied. He neglected to bring them for over two full years – this is dispositive. As in *Howell*, Plaintiff's application and its subsequent denial were discrete, particular events. At best, Plaintiff could only demonstrate "additional harm from a prior unconstitutional act." *Kuhnle*, 103 F.3d at 522. (citing *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991) ("Dixon and Toki suffer only the continuing *effects* of past discrimination and are not the victims of a continuing *violation.*")). Another case with comparable facts is *Goldsmith v. Sharrett*, 614 Fed. Appx. 824, 828 (6th Cir. 2015). In *Goldsmith*, a prisoner alleged that guards taking away his writings constituted a violation of the First Amendment, but the Sixth Circuit held that the guards' mere refusal to return the papers did not create a continuing violation. *Id.* at 828, "Continuing violations in the Section 1983 context are akin to hostile-work environment claims where the harm 'cannot be said to occur on any particular day' and individual incidents are not actionable on their own." *Id.* at 828-29. The denial of Plaintiff's application and appeal occurred on a particular day – March 12 and 24, 2022 (respectively). As in *Goldsmith*, Plaintiff here can likewise point to "significant discrete events."

Further, taking Plaintiff's proposed construction of the law at face value, any prospective plaintiff could renew their claims against Defendants, after any period of time, simply by revisiting the BMV's website and typing in their previously denied vanity plate. Plaintiff even appears to agree that this is the logical conclusion of his argument. PI Reply (Doc. 23), PageID # 2408 ("Even if Mr. Wonser had last applied for a vanity plate forty years ago, he could nonetheless proceed with his case[.]"). Statutes of limitations exist for two purposes – "requiring

4

plaintiffs to bring claims before evidence is likely to have gone stale" and "allowing potential defendants repose when they have not been put on notice to defend within a specified period of time." *Kuhnle*, 103 F.3d at 522. Unlike in *Kuhnle*, both principles apply here. The evidence (including testimony) germane to Plaintiff's claim is already stale. And Defendants were not timely put on notice to defend these claims. If any applicant for a custom plate could refresh a claim against Defendants by sending a letter or reentering the plate they sought into the BMV's website, repose for Defendants would be a permanent impossibility. Plaintiff's theory does not merely erode the principles giving rise to statutes of limitations – it totally obliterates them.

### C. Plaintiff states no basis for third-party standing.

Plaintiff relies on *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 108 S. Ct. 636, 98 L. Ed. 2d 782 (1988) in support of his claim that he qualifies for third-party standing to sue on behalf of other vanity plate applicants. But Plaintiff does not meet the standard set out by the Court in *Am. Booksellers* for third-party standing.

First, Plaintiff does not have an injury in fact, since he has no valid constitutional claim against Defendants. For the reasons set forth above, his personal application can no longer be litigated as it falls outside the applicable statute of limitations.

Second, the Guidelines are not "a statute" whose "very existence may cause others not before the court to refrain from constitutionally protected speech or expression." The Guidelines impose no fines or punishments to anyone who submits a vanity plate application. There is no need for pre-enforcement challenges of the sort contemplated in *Am. Booksellers* because the Guidelines impose no chilling effect. The people whose applications are rejected each have an opportunity to appeal and, if necessary, resort to legal action on their own behalf.

5

Further, these circumstances are poorly suited to a pseudo-class-action claim of the sort Plaintiff is seeking to pursue. Different parts of the Guidelines are applied to each vanity plate application and different issues arise for each requested plate. Plaintiff's plate contained abbreviated profanity, but he also seeks to challenge each of the other Guidelines and attack the manner in which they were applied to thousands of applications across years and years, taking issue with all manner of practices which have nothing to do with his license plate, such as the manner in which Defendants respond to public feedback once a plate has been issued. *See, e.g.,* Complaint, ¶¶57-60. These matters are beyond the present jurisdiction of this Court.

### III. Even if any of Plaintiff's First Amendment claims were timely, he does not plead facts indicating a violation by any Defendant.

#### A. The vanity-plate program is government speech. Vanity plates are created, distributed, and subject to final approval by the State of Ohio.

License plates physically originate from the government of the State of Ohio, are applied for via a state agency, and contain artwork prepared by the State and the word "OHIO" in large, visible letters. They comprise an essential part of the State of Ohio's daily operations in law enforcement and in any number of other official processes. It is a crime for an individual to make their own license plate; *see* R.C. 4549.08. In this, license plates are no different from other forms of government identification or official documents such as passports, vehicle registration forms, or speeding tickets. License plates are clearly distinguishable from a certification process like trademark applications – for this reason, *Matal v. Tam*, 582 U.S. 218, 235 (2017) is inapposite, contrary to Plaintiff's claims. The government is not merely "affixing a government seal of approval" to its license plates – it is literally creating and distributing them.

Anyone who wishes to use the back of their car to make a statement has virtually unlimited latitude to create or purchase bumper stickers expressing their sentiments. Granting

6

individuals the option to request custom alphanumeric messages on their license plates is a courtesy by the State of Ohio, not an additional forum for public discourse. The State could revoke the option in its entirety tomorrow without infringing on any person's First Amendment rights. Each plate is a government article which serves government purposes. And the State of Ohio – through the BMV – exerts final approval authority over each plate's contents, satisfying the elements set out in *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 201, 135 S. Ct. 2239, 192 L. Ed. 2d 274 (2015). It meets the criteria for government speech.

### B. Even if the vanity plates are not government speech, the Guidelines are reasonable and viewpoint neutral.

The Guidelines bar "words, combinations, and/or phrases (in any language or when read either frontward or backward)" that are profane, obscene, sexually explicit, scatological, "so offensive that they could reasonably be expected to provoke a violent response from viewers without additional comment," advocate lawlessness, or advocate lawless activities. Complaint (Doc. 1), ¶31, PageID # 6. As applied, these guidelines also bar acronyms and abbreviations of inappropriate content. *Id.*, ¶¶36-59, PageID ## 7-9. Whether or not these Guidelines are reasonable and viewpoint-neutral is obvious just by looking at their content.

Rather than attacking the contents of the Guidelines, Plaintiff argues that they discriminate against viewpoints *as applied*. But by Plaintiff's own admission, the language he requested plausibly contains abbreviated profanity. (Complaint, ¶85). This violates the Guidelines on its face. This fully explains why Plaintiff's application was rejected. There is no basis – in the Complaint, or in reality – for presuming some additional desire by the BMV to discriminate against his viewpoint. Plaintiff's arguments that others have gotten away with objectionable messages – or that there are gaps and inconsistencies across decades of applications – are more akin to someone arguing that speed limits discriminate because some get

7

away with speeding. This does not substantiate a violation of his First Amendment rights. "Allegedly arbitrary or inconsistent enforcement of a regulation whose terms are unambiguous does not render the regulation impermissibly vague." *Mt. Pleasant Blacktopping Co. v. Greene Cnty*, No. 21-3684, 2022 U.S. App. LEXIS 12057, at *9 (6th Cir. 2022); *see also 600 Marshall Entm't Concepts, LLC v. City of Memphis*, 705 F.3d 576, 586-87 (6th Cir. 2013).

### C. The Special Plate Screening Guidelines are not unconstitutionally vague, and barring profanity does not constitute "special rules against anti-religious speech."

Plaintiff is simply incorrect in stating that Defendants "do not dispute that the rule invoked against Mr. Wonser authorizes arbitrary enforcement." PI Reply (Doc. 23), PageID # 2418. Defendants have disputed this; *see* Motion for Judgment on the Pleadings (Doc. 9), PageID # 64 ("Nor do the Guidelines authorize or encourage 'arbitrary and discriminatory enforcement.'"). Defendants continue to dispute it – it is false, it is not the case, for the reasons set out in Defendants' original Motion. *See id.* Plaintiff, apparently unaware of Defendants' arguments, neglects to address them, and therefore no further reply is necessary.

Plaintiff does not dispute that "Fuck 46, Let's go Brandon" is a plausible interpretation of the plate he requested. Complaint, ¶85. Rather, he embarks on a bizarre argument that prohibiting "profanity" violates the Establishment Clause because it bars "anti-religious speech." PI Reply (Doc. 23), PageID ## 2418-19 (citing Black's Law Dictionary (12th ed. 2024)). However, "fuck," and similar language, is not religious or anti-religious speech – it is profanity. Profanity does not generally have religious connotations. The BMV is not attacking any pro- or anti-religion viewpoint of Plaintiff's. "Fuck" simply does not belong on a license plate, in abbreviated form or otherwise.

**IV.    Arguments not made by Plaintiff are conceded. This Court has no obligation to grant Plaintiff a "redo" of his memorandum in opposition, and has no reason to.**

Defendants' Motion for Judgment on the Pleadings argued that Plaintiff's claims were barred by the doctrine of laches and that each Defendant was entitled to immunity in their official and individual capacities; *see* Motion for Judgment on the Pleadings (Doc. 9), PageID ## 65-66. Plaintiff declines to address Defendants' point that the Complaint makes no factual allegations whatsoever of criminal conduct by Defendants as people; *see* Motion (Doc. 9), PageID ## 67-68. He additionally neglects to address Defendants' point that, if the plate requested by Plaintiff "has no objective meaning," then it is not speech under the First Amendment at all. *Id.*, PageID ## 60-63. To Defendants' knowledge, Plaintiff declines to address these in either his Opposition (Doc. 24) or his PI Reply (Doc. 23). Defendants encourage this Court to consider these points conceded.

Plaintiff has requested, in his Opposition (Doc. 24), that this court grant him a further fourteen days to prepare a response to Defendants' Motion if his motion to amend the complaint is denied. But Plaintiff has already had additional time to respond – in Plaintiff's Unopposed Motion for an Extension of Time to Respond (Doc. 10), Plaintiff claimed that "Defendants' motion raises a number of complex issues that have divided courts across the country and require thorough briefing[.]" Plaintiff's "thorough briefing" amounted to three paragraphs reincorporating the arguments in his PI Reply. Opposition (Doc. 24).

In fact, Plaintiff's motion for an extension of time to prepare his Opposition incorrectly stated that his original deadline to respond to Defendants' Motion for Judgment on the Pleadings was November 1, 2024. (Doc. 10). But Defendants' Motion was filed on October 2, 2024, and ordinarily parties have 21 days to respond; *see* Motion (Doc. 9); Loc. R. 7.2(a)(2). It is Defendants' understanding that Plaintiff *actually* had until October 23, 2024, to respond initially,

9

meaning the extension he requested to November 15, 2024, was for 23 days, instead of for 14 days as represented to Defendants and to this Court – exceeding the 21-day maximum permitted by Loc. R. 6.1(a).

It is entirely possible that this is inadvertent on Plaintiff's behalf, and in any case Defendants are willing to let the matter rest; nevertheless, Defendants submit that Plaintiff has had all the time he needs to prepare a "thorough briefing" to Defendants' Motion for Judgment on the Pleadings – a total of 44 days – and does not need any more.

**V.      Conclusion**

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion for Judgment on the Pleadings and dismiss all claims by Plaintiff.

Respectfully submitted,

/s/ Donald C. Brey
Donald C. Brey (0021965), *Trial Counsel*
Ryan C. Spitzer (0093515)
Gareth A. Whaley (0102156)
**ISAAC WILES & BURKHOLDER, LLC**
Two Miranova Place, Suite 700
Columbus, Ohio 43215-5098
dbrey@isaacwiles.com
rspitzer@isaacwiles.com
gwhaley@isaacwiles.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

On November 25, 2024, a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic system. Parties may access this filing through the Court's system.

/s/ Donald C. Brey
Donald C. Brey (0021965)