# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  May 05, 2026

Mr. Brian D. Bardwell
Speech Law
4403 St. Clair Avenue
Cleveland, OH 44103

Mr. Donald C. Brey
Mr. Ryan Spitzer
Isaac Wiles
Two Miranova Place, Suite 700
Columbus, OH 43215

   Re:  Case No. 25-3509, *Wonser v. Norman, et al.*
        Originating Case No. 2:24-cv-02160

Dear Counsel,

   The Court issued the enclosed opinion today in this case.

   Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Laurie A. Weitendorf
Opinions Deputy

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name:  26a0202n.06

Case No. 25-3509

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

┌─────────────────────────────┐
│          **FILED**          │
│         May 05, 2026        │
│     KELLY L. STEPHENS, Clerk│
└─────────────────────────────┘

JEFFREY WONSER,                                )
                                               )
        Plaintiff-Appellant,                   )
                                               )   ON APPEAL FROM THE UNITED
v.                                             )   STATES DISTRICT COURT FOR THE
                                               )   SOUTHERN DISTRICT OF OHIO
                                               )
CHARLES L. NORMAN, ANDY WILSON;                )
THOMAS J. STICKRATH                            )          OPINION
                                               )
        Defendants-Appellees.                  )

Before:  GIBBONS, THAPAR, and LARSEN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.  In March 2022, Jeffrey Wonser applied for a personalized license plate with the Ohio Bureau of Motor Vehicles (BMV), but his application was denied because it did not conform to its guidelines.  Wonser promptly appealed the denial, but the BMV rejected his request for reconsideration later that month on the same grounds as its initial decision—potential perception of inappropriateness.  A few months later, Wonser's counsel sent a demand letter to the BMV asking it to refrain from further violating Wonser's right to free speech and approve his personalized license plate application.  The letter also asked the BMV to apply constitutionally defensible criteria when evaluating license-plate applications.  The BMV declined Wonser's invitation and implied that, because Wonser had provided varying explanations of the meaning of his requested personalized license plate, it had already properly reviewed his application.  No further action was taken on his application, and Wonser eventually received a full refund from the BMV in May 2022.

No. 25-3509, *Wonser v. Norman et al.,*

In April 2024, after a leadership change at the BMV, Wonser reapplied for the same license plate in hopes of a different outcome.  However, the BMV's online portal still did not allow him to register his license plate.  Wonser's attorney, once again, reached out to the BMV, demanding that it reverse course and warned that if his client's demands were not met, Wonser would sue.  On May 3, 2024, Wonser filed suit against three BMV employees, asserting a Section 1983 claim for violations of his First Amendment rights, both facially and as-applied to him, as well as a state-law claim seeking civil liability.  Defendants moved for judgment on the pleadings, which the district court granted, dismissing Wonser's case as time-barred under the applicable Ohio statute of limitations, and declining to exercise supplemental jurisdiction over his remaining state-law claim.

On appeal, Wonser raises various issues, but the only ones properly preserved and thus before us are whether the district court erred in dismissing his case as time-barred and, relatedly, whether the "continuing violation" doctrine tolled the statute of limitations applicable to his claims.  The record establishes that there is no material issue of fact that Wonser's latest alleged constitutional violation from April 2024 arises from the denial of the same personalized license plate as his initial violation dating back to March 2022; thus, Wonser's complaint is untimely. Accordingly, we affirm the district court's decision granting defendants' motion for judgment on the pleadings.

## I.

On March 9, 2022, Jeffrey Wonser, an Ohio citizen, filed an application with the BMV to display a personalized license plate comprised of the following characters: F46 LGB.  Wonser asserts that this "string of characters . . . has no objective meaning" and claims that "[m]ost people who see it attach no meaning to it whatsoever."  DE 1, Compl., Page ID 11.  But he also points out

- 2 -

No. 25-3509, *Wonser v. Norman et al.,*

that some have interpreted it as "a gay-pride message intended to reclaim a homophobic slur," while others have interpreted it as an insult aimed at the 46th president of the United States, President Joe Biden, when read as: "Fuck 46 . . . , Let's Go Brandon." *Id.*

On March 11, 2022, Janet Lohr—a BMV customer service assistant—sent Wonser an email regarding his application, informing him that a "Special Plate Committee" had reviewed and denied his request "due to the potential perception of inappropriateness."[1] DE 1, Compl., Page ID 12; DE 4-1, Payne Aff., Page ID 42-43.  Thus, the BMV was unable to process his order. Specifically, Lohr explained that BMV's "Guideline 1" states that:

> The BVM rejects any special license plate that contains words, combinations, and/or phrases (in any language, whether frontwards or backwards) that:
>
>> 1.  Are profane (that is, swearwords or expletives), or can be interpreted as obscene, sexually explicit, or scatological (i.e., pertaining to feces or excrement)
>> 2.  Are so offensive that they could reasonably be expected to elicit a violent response from viewers without additional comment.
>> 3.  Advocate immediate lawlessness or advocate lawless activities.

DE 4-1, Payne Aff., Page ID 43.

Lastly, Lohr informed Wonser that it could assist him with either "another license plate selection" or process "a full refund/credit." *Id.* A few minutes later, Wonser replied, stating that he did not understand why his request had been denied, as he did not believe it violated any rules.

---

[1] Although the BMV denied Wonser's license plate request on this date via email, it also sent Wonser a formal letter titled "Inappropriate Request – Notice of Denial" dated March 15, 2022. The letter explained that special plates issued by the BMV were "a representation of the State . . . viewed by numerous motorists including families and children, not only in Ohio, but in other states and countries." DE 4-1, Answer, Page ID 44. The letter also informed Wonser that it was "not the intent of the BMV to provide motorists with a forum or an avenue for promoting messages or causes which may be distasteful or offensive" and cited Ohio's law authorizing the Registrar of Motor Vehicles to assign a distinctive number to motor vehicle registrants and "to determine which combinations w[ould] or w[ould] not be displayed on the official license plates of the State." *Id.* The letter concluded by reiterating the option for a refund and detailing the appeals process, as described in the email sent to Wonser on March 11, 2022.

No. 25-3509, *Wonser v. Norman et al.,*

He also communicated his desire to appeal the BMV's decision. Lohr immediately replied, explaining that "[w]hen reviewing plates[,] texting abbreviations, acronyms and slang are taken into account" and that the license plate Wonser had selected "did not conform to [G]uideline 1" as listed in the original email. *Id.* at 42. Lohr further noted that Wonser could "request a different personalization, get a full refund or appeal the decision." *Id.* Lohr explained that if Wonser wanted to file an appeal, it needed to: (1) be "in writing"; (2) be labeled as an appeal; (3) articulate "the reason for wanting the plate"; (4) include "any supporting documentation"; and (5) "be submitted within 30 days of the first letter (3/11/22) by email or USPS mail." *Id.* Lastly, Lohr reiterated that if Wonser wanted to "choose a different personalization," he could "email the selection with the meaning." *Id.*

On March 12, 2022, Wonser transmitted his administrative appeal via email. In his appeal, Wonser claimed that his license plate request "was based on the reasoning that 'LGB' for 'Let's Go Brandon' refer[red] to Brandon Lyon's, on Team USA Paralympics[,]" and that "F46" referred "to the World Para Athletics classification of Upper limbs/affected by limb deficiency, impaired muscle power or impaired range of movement."[2] *Id.* at 41. Wonser further maintained that the BMV violated his First Amendment rights by denying his requested license plate, that "Guideline 1" was "too vague" to withstand constitutional scrutiny, and that he wanted to "challenge the Special Plates Committee . . . denial based on [G]uideline 1." *Id.* Specifically, Wonser contends to "have learned" that the BMV had approved similar combinations, including "F45," "F46," "LGB," "FDT," and "FJB." *Id.* Lastly, Wonser requested that if the BMV denied his appeal, it

---

[2] Wonser subsequently contradicted this explanation in his filed complaint, in which he asserted that he had requested "a vanity plate with no objective meaning." DE 1, Compl., Page ID 11.

No. 25-3509, *Wonser v. Norman et al.,*

provide him with "documentation as to what year and what reason of approval" it listed for those similar license plates. *Id.*

On March 24, 2022,[3] the BMV sent Wonser a letter responding to his "request for reconsideration" of his "special license plate: F46 LGB" from March 12, 2022. *Id.* at 45. In its response, the BMV explained that after considering Wonser's arguments in his request for reconsideration, it upheld its decision to deny his special license plate and restated "Guideline 1's" language verbatim from its initial denial email. The letter concluded by directing Wonser to either the issuing Deputy Registrar or the Registration Support Services Unit if he had any additional questions about ordering new special plates or requesting a refund. The BMV did not offer Wonser any further opportunity to appeal. Instead, the BMV "gave him until May 20, 2022[,] to choose from three options: 'request a different personalization, get a full refund, or renew [his] current plate and receive[] a partial refund.'" DE 1, Compl., Page ID 13. In response, Wonser "requested an opportunity to speak to the BMV's Registrar to make his case, but the BMV refused." *Id.* at 14. On May 20, 2022, the BMV processed Wonser's refund.

On July 14, 2022, Wonser's counsel sent the BMV a letter demanding that it "reverse its position, approve [Wonser's] application, and agree to restrict itself to objective, constitutionally defensible criteria in evaluating applications going forward." DE 12-39, Demand Letter, Page ID 436. Wonser's counsel argued that the BMV's rejection of Wonser's application was "neither

---

[3] Wonser claims that after appealing the denial of his special license plate, the BMV denied his request "nine days later." DE 1, Compl., Page ID 12. However, Wonser's alleged timeline contradicts the number of days between the stamped date on his appeal email (March 12, 2022) and the date on BMV's letter denying his request (March 24, 2022). And where an inconsistency between an allegation in a complaint and an exhibit exists, "the exhibit controls." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012) (citation omitted).

No. 25-3509, *Wonser v. Norman et al.,*

reasonable nor viewpoint neutral" and that "it violate[d] its own agreement in *Zucco*."[4]  *Id.*

Wonser's counsel further claimed that "F46 LGB" was an "objectively meaningless" combination

of characters "whose meaning depends on the reader's own background and perspective." *Id.*  He

also noted that "F46 LGB" was "objectively devoid of obscenity, profanity, or scatological

language" and if this specific "alphanumeric sequence ma[de] the Bureau's censors imagine

President Biden having sex, [perhaps] that [was] grounds for counseling, not for violating Mr.

Wonser's right to free speech." *Id.*  In closing, Wonser's counsel warned the BMV that Wonser

was "prepared to seek both injunctive and monetary relief in the very near future" if it did not

acquiesce to his demands by July 15, 2022. *Id.*

Five days later, the BMV responded, declining Wonser's demands.  In its response, signed

by an Associate Legal Counsel, the BMV stated that it had "properly reviewed" Wonser's

application for a personalized license plate, noting that Wonser had "provided varying

explanations for the meaning of his requested personalization." DE 12-41, BMV Response Letter,

Page ID 447.  The letter encouraged Wonser to utilize the BMV's "online specialized plates

lookup" to ascertain what personalized plates remained available and informed him that

"[r]egarding the current status of the law," it would not be "able to provide [him] with legal

advice." *Id.*

After a change in leadership at the Ohio Department of Public Safety (ODPS), Wonser

"sought to apply again for the same license plate on April 22, 2024." DE 12-51, Wonser Decl.,

Page ID 2220.  But Wonser was unable to register "F46 LGB" because "[t]he BMV had

---

[4] Wonser points to *Zucco v. Caltrider*, a case from the Southern District of Ohio, in which the BMV reached a settlement requiring it to approve Zucco's personalized license plate application and "adopt narrower guidelines for evaluating applications." DE 1, Compl., Page ID 5–6. Wonser claims, though, that shortly after *Zucco*, "the BMV returned to a largely arbitrary censorship regime." *Id.* at 6.

No. 25-3509, *Wonser v. Norman et al.,*

programmed its computers to automatically reject his [application]." DE 1, Compl., Page ID 14; DE 12-49, BMV Portal, Page ID 2191. On April 24, 2024, Wonser's counsel reached out to the same BMV attorney who had responded to his demand letter from July 2022. In his email, Wonser's counsel informed BMV's counsel that his client had attempted to reapply for his chosen license plate but that the BMV's "website wouldn't allow it" and inquired whether the "change of leadership at both ODPS and the BMV" had "resulted in any policy changes that would affect the BMV's previous decision[.]" DE 12-47, Email to BMV, Page ID 2172. Wonser never ultimately "received the plate with the message he requested." DE 1, Compl., Page ID 14.

## II.

On May 3, 2024, Wonser sued three BMV officials in federal court, arguing that the BMV's Guidelines violated his First Amendment rights both facially and as applied to him.[5] Specifically, Wonser argued that the BMV rejected his application on the grounds of its "standardless and unconstitutional licensing scheme" that confers upon it "unbridled discretion in determining which messages to approve or reject." *Id.* at 1. Wonser further alleged that the BMV abridged "his right of freedom of speech" as guaranteed by the United States and the Ohio Constitutions. *Id.* at 2.

Wonser also alleged that when the BMV began allowing vehicle owners to customize their license plates to create messages of their own choosing, it "never promulgated any rules governing what messages it would and would not approve on vanity plates." *Id.* at 5. Instead, he claims, the BMV "assembled a panel of employees with no special expertise or qualifications, and tasked them with operating as government censors, responsible for reviewing applications for vanity plates and deciding whether they should be approved or rejected." *Id.*

---

[5] Since Wonser did not specify whether he was suing defendants in their individual or official capacities, the district court correctly assumed that they were being sued in their official capacities. *See Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991).

No. 25-3509, *Wonser v. Norman et al.,*

Additionally, Wonser contends that rather than screening out messages actually "obscene, sexually explicit, or scatological," the BMV "permits its censors to reject any message that can be interpreted as [such]." *Id.* at 6 (citation modified). Under this system, Wonser believes that the BMV prohibits any messages it does not like while "permit[ting] arbitrary enforcement of the criteria it purports to apply, rejecting some messages as violations of its rules while approving virtually identical messages that could not be approved if the rules were being applied consistently." *Id.* at 9. Wonser insists that the BMV's website "will not even process applications for license plates unless applicants disclose the meaning of their message so its censors can evaluate the message based on the ideas or opinions it conveys." *Id.* at 10. Wonser also claims that the "BMV censors are more lenient toward messages from Democrats than from Republicans." *Id.* at 11. To bolster his arguments against the BMV's "censorship regime," Wonser devoted approximately a third of his complaint to enumerating dozens of BMV's approved and rejected license plates.

On July 3, 2024, defendants answered Wonser's complaint, raising several defenses, including that the statute of limitations barred Wonser's claims. Along with their answer, defendants included an affidavit from Jeffrey Payne, the BMV Record Services' Chief of Public Safety, certifying that the three exhibits attached to defendants' responsive pleading were "true copies of public records kept by the [ODPS] and the BMV." DE 4-1, Answer, Page ID 39. Payne also asserted that "[t]he only appeal received by the BMV from Jeffrey Wonser was the March 12, 2022, appeal" included among defendants' exhibits. *Id.* at 40. The three attached exhibits were: (1) a series of emails between the BMV and Wonser regarding his request for a personalized license plate; (2) BMV's letter to Wonser formally denying his request and advising him of his

No. 25-3509, *Wonser v. Norman et al.,*

right to appeal within thirty days; and (3) BMV's letter denying Wonser's appeal to display his license plate of choice—"F46 LGB."

On October 2, 2024, defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  In their motion, defendants argued that:  (1) Wonser's First Amendment rights had not been violated since "meaningless strings of characters" were not constitutionally protected; (2) BMV guidelines were not constitutionally vague and had been properly applied in reviewing Wonser's application; (3) Wonser's claims were barred by the applicable statute of limitations and by the doctrine of laches; (4) they were entitled to immunity as to Wonser's state-law claims against them; and (5) Wonser had failed to allege any facts or set forth any viable legal theory to support his state-law claims of criminal activity against them in either their individual or official capacity.  DE 9, Mot. for Jdg. on the Pleadings, Page ID 57.

Wonser filed a single-page opposition brief, in which he requested that the district court: (1) grant him leave to amend his complaint and (2) deny defendants' Rule 12(c) motion as moot. Alternatively, Wonser requested that if the court denied his motion to amend, it incorporate "the statute-of-limitations and First Amendment arguments from his reply brief in support of his motion for a preliminary injunction,"[6] which he filed the same day.  DE 24, Opp. Mot. Jdg. on the Pleadings, Page ID 2424.  Lastly, Wonser requested that the court "grant him an additional 14 days in which to fully respond to the motion for judgment on the pleadings."[7]  *Id.*  Defendants replied,

---

[6] On October 6, 2024, Wonser separately moved for a preliminary injunction requesting that defendants (1) be barred from enforcing their rules for vanity license plates and (2) requiring them to approve his personalized license-plate application.  Along with his motion for a preliminary injunction, Wonser attached fifty exhibits along with a three-page sworn declaration.  After defendants opposed Wonser's motion, Wonser filed a reply brief on November 11, 2024.

[7] Nothing on the court's docket indicates whether the district court granted Wonser's request for enlargement of time.  Nevertheless, given that the court's ultimate order states that defendants' Rule 12(c) motion had been "fully briefed" and was "ripe for consideration," it suggests that the

No. 25-3509, *Wonser v. Norman et al.,*

asking the court to "exclude all matters outside the pleadings in ruling" on their Rule 12(c) motion. DE 27, Defs. Repl. Mot. for Jdg. on the Pleadings, Page ID 2434.  Specifically, they urged the court to deny Wonser's request to incorporate arguments raised in his reply brief from his injunctive motion because these arguments impermissibly "rel[ied] on matters outside the pleadings" and were thus "not properly before the Court for purposes" of a Rule 12(c) motion. *Id.*[8]

On November 8, 2024, Wonser also filed a motion for leave to file an amended and supplemental complaint "to reflect Defendants' ongoing—and blatant—violations of the First Amendment, including their rejection of his most recent vanity-plate application on November 1, 2024."[9]  DE 21, Mot. for Leave to Amend Compl., Page ID 2400.  Wonser also explained that he sought to "(1) clarify that he [was] seeking relief on an Equal Protection theory; and (2) provide additional details bearing on arguments raised in Defendants' motion for judgment on the pleadings, permitting the Court to address those issues more definitively on its first review, rather

---

court considered Wonser's single-page opposition as sufficient to rule on defendants' Rule 12(c) motion.

[8] Notwithstanding defendants' plea, the district court addressed Wonser's argument on the "continuing violation" doctrine, which had only been raised in Wonser's motion for a preliminary injunction's reply brief and referenced several facts found in exhibits attached to the opening brief, including: (1) Wonser's July 2022 letter to the BMV demanding that it reconsider its guidelines; (2) the BMV's response to Wonser's July 2022 demand letter; (3) Wonser's attempt to re-apply for his special plate via the BMV's website in April 2024; and (4) the email request for reconsideration from Wonser's counsel after a leadership change at the ODPS and BMV.  Under Fed. R. Civ. P. 12(d), "[i]f on a motion under . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Here, however, neither party has argued, below or on appeal, that the district court improperly converted defendants' 12(c) motion for judgment on the pleadings into a motion for summary judgment.  For this reason, Wonser has forfeited any such argument on appeal. *See Cotterman v. City of Cincinnati, Ohio*, No. 21-3659, 2023 WL 7132017, at *4 (6th Cir. Oct. 30, 2023); *see also Smith v. City of Union, Ohio*, 144 F.4th 867, 878 (6th Cir. 2025) ("Ordinarily, we treat an argument as forfeited if a party did not raise it below, or failed to do so in their opening brief on appeal.").

[9] Wonser makes no mention of this alleged November 2024 violation in his appeal.

No. 25-3509, *Wonser v. Norman et al.,*

than requiring amendments and another round of briefing in the event the Court f[ound] any deficiencies in the initial Complaint." *Id.*

A few weeks later, defendants opposed Wonser's motion for leave, arguing that by attempting to amend his complaint six months after the original complaint, granting leave would effectively restart the case. Defendants claimed that Wonser had filed the motion for "dilatory purposes." DE 28, Defs' Memo Contra Mot. for Leave to Amend Compl., Page ID 2444. They also argued that Wonser's new complaint had been filed "for the purpose of circumventing [their] Motion for Judgment on the Pleadings in lieu of preparing a substantive response[.]" *Id.* Specifically, defendants contended that Wonser's amendments had been "strategically inserted, intended to moot the pending Motion for Judgment on the Pleadings[.]" *Id.* at 2447.

On January 29, 2025, the district court denied Wonser's motion for leave to amend without prejudice because he had brought it after the deadline in the court's scheduling order. But most importantly, the court found that Wonser had failed to make a showing of good cause as required by Fed. R. Civ. P. 16(b)(4). Nevertheless, the court stated that it was denying Wonser's motion *without* prejudice, enabling him to refile "a properly supported motion setting forth the required good cause." DE 30, Opinion & Order, Page ID 2467.[10]

On June 11, 2025, the district court granted defendants' motion for judgment on the pleadings in part and declined to exercise supplemental jurisdiction over Wonser's state-law claim, dismissing it without prejudice. In addition to deciding defendants' Rule 12(c) motion, the court also denied Wonser's pending motion for a preliminary injunction in the same order, concluding

---

[10] Wonser ultimately did not file another motion for leave to amend.

No. 25-3509, *Wonser v. Norman et al.,*

that Wonser had failed to establish a "strong likelihood of success on the merits."  DE 38, Op. & Order, Page ID 2496.  Wonser timely appealed.[11]

### III.

"Federal Rule of Civil Procedure 12(c) permits a party to file a motion for judgment on the pleadings after the pleadings are closed—but early enough not to delay trial."  *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1001 (6th Cir. 2024) (citation modified).  We review a "district court's decision granting a Rule 12(c) motion for judgment on the pleadings under the same de novo standard as one granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).  "Although our decision rests primarily upon the allegations of the complaint, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account."  *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (citation modified).

For a nonmovant-plaintiff "[t]o state a valid claim, [his] complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory."  *Ill. Union Ins. Co.*, 508 F.3d at 336.  But we "need not accept as true legal conclusions or unwarranted factual inferences."  *Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 535 (6th Cir. 2024) (quoting *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 387 (6th Cir. 2022)).  Accordingly, applying this framework, "a motion brought pursuant to Rule 12(c) is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of

---

[11] Since Wonser does not raise on appeal the district court's denial of his preliminary injunction or its unwillingness to exercise supplemental jurisdiction over his state-law claim, we need not address either issue.  *See Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998) ("Issues which were raised in the district court, yet *not* raised on appeal, are considered abandoned and not reviewable on appeal.").

No. 25-3509, *Wonser v. Norman et al.,*

law." *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1030 (6th Cir. 2025) (citation modified).

## IV.

Wonser raises three issues on appeal.  First, he contends that the district court erred by applying 42 U.S.C. § 1983's two-year statute of limitations to dispose of his First Amendment claim that had occurred less than a month before filing his complaint.  Second, he argues that the district court erred by failing to apply the "continuing violation" doctrine to satisfy the statute-of-limitations period.  Lastly, he argues that the district court erred by refusing to address his "right-to-receive speech" argument because it had not been explicitly raised in his complaint.[12]

We hold that the district court properly concluded that the statute of limitations barred Wonser's claims and that the related "continuing violation" doctrine did not toll his claims' statute of limitations.

"Section 1983, which 'allows plaintiffs to sue state actors who violate their constitutional rights,' does not contain 'time limits within which plaintiffs must seek redress for constitutional wrongs.'" *Brown*, 135 F.4th at 1031 (quoting *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1008 (6th Cir. 2022)).  Instead, the relevant statute of limitations is the one "applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't*

---

[12] Wonser claims that "the district court explicitly discarded this argument without analyzing it because he had not alleged it in his complaint" and argues that since "the 'theory of the pleadings' is long dead" he is "no longer required to explicitly allege every theory for relief; he is merely required to allege—directly or indirectly—facts that would support a recovery under some viable legal theory."  CA6 R.18, Appellant Br., at 6 (citation modified).  However, we agree with the district court's decision not to consider Wonser's argument.  Since Wonser "did not raise this claim below, much less plead it in [his] complaint, . . . it has been waived." *Mitchell v. McNeil*, 487 F.3d 374, 379 (6th Cir. 2007).

No. 25-3509, *Wonser v. Norman et al.,*

*of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  The parties agree that because the alleged violation here arose in Ohio, it is subject to Ohio's two-year statute of limitations for personal injury claims.  *Zappone v. United States*, 870 F.3d 551, 559 (6th Cir. 2017).  Furthermore, we review de novo a "district court's determination that a complaint was filed outside of the statute of limitations."  *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009) (citation modified).

Wonser argues that the district court erred in granting defendants' motion for judgment on the pleadings because in doing so, it drew a "fatal inference *against* him as the non-moving party[.]"[13]  CA6 R.18, Appellant Br., at 9–10 (emphasis in original).  Specifically, Wonser argues that it is "reversible error" for the district court to have inferred that the only application he made was for "F46 LGB," which is the only one that "would bar him from relief."[14]  *Id.* at 9.  In other

---

[13] Wonser contends that the fact "that all his subsequent applications were for the same license plate that had been rejected in March 2022—is not alleged in his Complaint, nor is it alleged in Defendants' Answer or Motion for Judgment on the Pleadings."  CA6 R.18, Appellant Br., at 9. However, Wonser's allegations are not only unsupported by the record but are squarely contradicted by it.  Defendants' answer explicitly mentioned that Wonser's counsel sent a letter demanding reconsideration for the BMV regarding his license-plate application in July 2022. Furthermore, in seeking to incorporate the statute-of-limitations argument from his reply brief in support of his motion for a preliminary injunction, Wonser's opposition to defendants' motion for judgment on the pleadings stated that "Defendants rejected Mr. Wonser's license plate based on the viewpoint it expressed when he first applied in 2022, and they did the same thing when he applied again on April 2024."  DE 23, Reply Br. Mot. for Prelim. Inj., Page ID 2407.  Lastly, in his own sworn declaration, Wonser asserts that "[a]fter Defendant Wilson replaced Defendant Stickrath as director of the Ohio Department of Public Safety, [he] sought to apply for the *same* license place on April 22, 2024."  DE 12-51, Wonser Decl., Page ID 2220 (emphasis added).

[14] Wonser posits that "[w]hile they are not all documented in his Complaint, [he] can represent that had the district court not construed that allegation so narrowly that it required dismissal, he would have been able to support it with evidence of dozens of other rejected applications from December 2022 forward."  *Id.* at 10 n.21.  We remind Wonser, however, that "our function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order."  *Bormuth v. Cnty. of Jackson*, 870 F.3d 494, 501 (6th Cir. 2017) (citation modified).

- 14 -

No. 25-3509, *Wonser v. Norman et al.,*

words, Wonser argues that if the court could have reasonably inferred that he requested a plate with a message other than F46 LGB, it should have done so.  *Id.*

"The 'standard rule' is that a cause of action accrues 'when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'"  *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). "Because an action generally accrues when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred, we typically determine the accrual of a § 1983 action by looking to the event that should have alerted the typical lay person to protect his or her rights."  *Id.* (citation modified).

The BMV rejected Wonser's license plate application on March 11, 2022, via email; by letter on March 15, 2022; and denied his administrative appeal on March 24, 2022, without affording Wonser any additional opportunity for appeal.  Thus, after the BMV's unappealable administrative decision in March 2022, Wonser knew or at least should have known that the act providing the basis of his alleged First Amendment violation had occurred.  Because Wonser filed this action on May 3, 2024, the two-year limitations period bars any claim that accrued before May 3, 2022, and thus, his First Amendment challenge is time-barred.  And although Wonser has asked us to reverse the district court for failing to infer that his April 2024 denial was for a license plate with a timely accrual date, in other words, any plate *besides* "F46 LGB," we decline his invitation to do so.  We cannot ignore the incontrovertible record evidence—including a screenshot of the BMV license-plate lookup portal website displaying the "F46 LGB" characters in the "Personalized Plate Number" field with the message: "Please fix the following errors: Inappropriate/Invalid Plate."[15]  *See Moderwell v. Cuyahoga County*, 997 F.3d 653, 659 (6th Cir.

---

[15] Notably, this exhibit is titled: "2024-04-22 1959 BMV rejection message re F46 LGB."

No. 25-3509, *Wonser v. Norman et al.*,

2021) ("For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true . . . But we need not accept as true . . . unwarranted factual inferences." (citation modified)).

And although Wonser correctly notes that each discrete discriminatory act "starts a new limitations period," *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S .663, 671 (2014), the BMV's denial of any subsequent applications seeking identical relief as a previously rejected license plate application *does not* constitute a "discrete" act capable of restarting the clock on the statute of limitations. Indeed, "[r]epeated requests for further relief from a prior act of discrimination [does] not set the time limitations running anew." *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1237 (6th Cir. 1980). To hold otherwise would render the relevant statute of limitations period meaningless. *See, e.g.*, *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 67 (7th Cir. 1996) ("If we allowed him to restart the statute of limitations period merely by filing another claim on the same basis as his previous claim, the limitations period would be meaningless.").

We also reject Wonser's attempt to invoke the continuing-violation doctrine to satisfy the statute of limitations. A "continuous violation exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiff[] accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) (citation modified). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* (quoting *Eidson*, 510 F.3d at 635). And notably, this doctrine is "rarely extend[ed] . . . to § 1983 actions" in our circuit. *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).

- 16 -

No. 25-3509, *Wonser v. Norman et al.,*

As already established, the BMV applied its Guidelines to Wonser's application twice:  (1) on March 11, 2022, when he initially applied for the "F46 LGB" license plate and (2) when his appeal of this initial rejection was denied on March 24, 2022.  These were discrete, particular events that triggered the statute of limitations; thus, we reject Wonser's attempt to restart his statute of limitations clock by filing an identical application to the BMV in April 2024.  "Repeated requests for . . . relief from a prior act of discrimination" do not trigger the continuing violation doctrine.  *Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813 (6th Cir. 2015) (citation modified).  We thus reject Wonser's attempt to restart his statute of limitations clock by reasserting an identical application to the BMV in April 2024.

Furthermore, "'[b]ecause the statute of limitations is an affirmative defense, the burden is on the defendant[s] to show that the statute of limitations has run,' and 'if the defendant[s] meet this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations."  *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (quoting *Campbell v. Grand Trunk W. R.R. Co.,* 238 F.3d 772, 775 (6th Cir. 2001)).  Here, defendants presented time-stamped evidence in their answer, all of which is public record, containing Wonser's administrative proceedings with the BMV; thereby properly discharging their burden and shifting it to Wonser.  By arguing that the continuing violation doctrine should apply to his claims, Wonser has tried to establish an exception to the statute of limitations; however, his attempt is in vain as "[m]ere requests to reconsider . . . cannot extend the limitations periods applicable to the civil rights laws."  *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 n.15 (1980); *see also Assa'ad-Faltas v. Pres. of Univ. of S.C.*, 291 F. App'x 534, 536 (4th Cir. 2008) ("[T]he statute of limitations may not be evaded by simply renewing a request for relief after the limitations period has expired.").

- 17 -

No. 25-3509, *Wonser v. Norman et al.,*

In sum, the record evidence undisputably shows that Wonser's initial denial, subsequent appeal, and request for reconsideration concerned only the BMV's rejection of the "F46 LGB" license plate.  This claim accrued in March 2022.  And we find that Wonser's attempt to restart the statute of limitations clock by reasserting an identical claim for relief in April 2024 does not allow him to evade the two-year limitations period.  We therefore hold that the district court properly granted defendants' motion for judgment on the pleadings because the applicable statute of limitations bars Wonser's case.  Accordingly, defendants are entitled to judgment as a matter of law.

**IV.**

For the foregoing reasons, we affirm the judgment of the district court.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-3509

JEFFREY WONSER,

    Plaintiff - Appellant,

    v.

CHARLES L. NORMAN; ANDY WILSON; THOMAS
J. STICKRATH,

    Defendants - Appellees.

> **FILED**
> May 05, 2026
> KELLY L. STEPHENS, Clerk

Before:  GIBBONS, THAPAR, and LARSEN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____

Kelly L. Stephens, Clerk